[No. 8010.   Department Two.   January 8, 1910.]

JOHN T. GARVER, *Appellant*, v. GREAT NORTHERN RAILWAY
COMPANY *et al.*, *Respondents*.[1]

RELEASE AND DISCHARGE—FRAUD IN SECURING—EVIDENCE—SUFFI-
CIENCY.   In an action for personal injuries for which plaintiff had
signed a written release in consideration of $500 paid him upon a
settlement nine days after the accident, there is no evidence of
fraud warranting the setting aside of the settlement or the sub-
mission of the case to the jury, where it appears from the plain-
tiff's own testimony that his mind was clear and he was able to
transact business, that no fraud was practiced upon him, that he
asked no advice from physicians or friends although he had oppor-
tunity to do so, that he had an opportunity to read the papers,
headed, "release of damages" but failed to do so, that a first offer
of $175 was raised to $500 and accepted, and that he retained that
sum, and that he dealt at arm's length with the defendant.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered January 19, 1909, upon the
verdict of a jury rendered in favor of the defendant by di-
rection of the court, in an action for personal injuries.   Af-
firmed.

*Plummer & Latimer* and *Fred Miller*, for appellant.

*F. V. Brown*, *A. J. Laughon*, and *J. J. Lavin*, for respond-
ents.

CROW, J.—Action by John T. Garver against Great Nor-
thern Railway Company, a corporation, and Charles A. Rose-
brook, its yard master, to recover damages for personal in-
juries.   From a directed verdict and judgment in favor of
the defendants, the plaintiff has appealed.

The appellant, an employee of a transfer company, was
injured while unloading freight from a car of the defendant
railway company.   The trial judge sustained the respond-
ents' motion for a directed verdict, and the only question
before us is whether it erred in so doing.   The respondents,

[1]Reported in 106 Pac. 192.

although denying their original liability, pleaded a settlement with appellant for the sum of $500, and that appellant had executed a written instrument releasing respondents from further liability. Replying, appellant alleged that the settlement had been fraudulently obtained; that he did not know it was a settlement; ·that he understood that he was being compensated for loss of time only; that he reposed especial confidence in the claim agent and physicians of the railway company, who misrepresented the probable extent and duration of his injuries, and that he did not know the nature of the papers executed by him.

On the trial the appellant admitted that he had received $500; that he had signed the release and other papers showing a settlement; but denied that he knew their contents or intended to do anything further than sign a receipt for money then paid. He testified that at the time of the alleged settlement he was confined to his bed, suffering from his injuries, but did not state that his faculties were impaired, that he was unconscious, or that he was in such physical or mental condition as to render him unfit for the transaction of business. In fact, his evidence shows that his mind was clear and that he fully understood and now remembers all that occurred. He was injured on January 20, 1908. The settlement was made nine days later. Respondents' claim agent first called upon him about January 24, and ascertained the wages he had been earning, which he stated were $70 per month. The agent first suggested $175 as the amount to be received by him, but called some days later and stated that he was then authorized to pay $500, which appellant accepted.

Appellant further testified that he at no time asked the attending physicians to advise him of his true condition or the length of time he would probably be disabled. One physician, Dr. Catterson, was called by appellant's employer but appellant also failed to consult him as to his condition. There is no evidence to show that any confidential relation

existed between the appellant and the claim agent or any of the attending physicians provided by the railway company, and no motive seems to have existed compelling or inducing him to rely on their representations as to the extent of his injuries or as to respondents' liability. The only statements of the claim agent detailed in appellant's evidence were expressions of opinion and not misrepresentations of fact. Appellant admitted that the physicians expressed no opinions to him. It is manifest that he was not deceived or misled by them. The evidence fails to show that he had any less knowledge of the facts and surrounding circumstances than had the claim agent, the only person with whom he dealt.

Appellant testified that, when the claim agent called the second or third time, he signed the papers and received the $500; that he was not then aware of the contents of the papers; that he simply signed them where directed; but fails to show any attempt upon the part of the agent to prevent him from reading them or knowing their contents. Early in February, within less than a week after receiving the money, appellant, traveling alone, made a trip to Portland, Oregon, where he remained about ten days. He then returned to Spokane and, a few days later traveled alone to Des Moines, Iowa, where he remained, visiting friends, for several weeks. Thence he went to St. Joe, Missouri, returning to Spokane in the latter part of April. During all this time he consulted no physician, nor did he make any effort to obtain any knowledge of his true condition. He has retained the $500 paid by the respondent railway company, but in his reply alleged that he tendered it into court. The evidence shows that he failed to do so. The original written release which is in the record is partly printed and partly typewritten. The appellant testified that the typewritten portion had not been inserted when he signed it. Accepting this statement as true, it is apparent from the printed portion that it was a release of his entire claim for damages for personal injuries. The first printed words appearing in large type are, "Great

Northern Railway Line. Release of Damages." There is no evidence that appellant was unable to read the paper, that he was prevented from doing so or that he had no opportunity to do so. His own evidence indicates that he could have read it had he so desired. This court has been very liberal in permitting settlements of claims for damages for personal injuries to be avoided when improperly or fraudulently obtained. But in view of appellant's own evidence, from which it appears that he had an opportunity to advise with physicians, that he had friends attending him with whom he might have consulted, that he asked advice from no one, that he had an opportunity to read the papers but failed to do so, that the offer of $175 first considered was later raised to $500 and accepted by him, that he received and retained that sum, that no confidential relation existed between him and any party with whom he negotiated, that he appears to have dealt at arm's length, that there is an utter absence of evidence showing or tending to show fraud, and that fraud, although alleged by him, will not be presumed, we conclude that the evidence offered to sustain his allegation of fraud was not sufficient for submission to the jury; that the settlement was valid, and that it bars him from any further recovery. But one conclusion can be reached from appellant's own evidence, and that is that, at the time he made the settlement and received the money he was satisfied with the transaction; that his present claim of false representations and deceit is not supported by the evidence, and that the established facts fail to bring his case within any rule of law granting relief on account of fraud.

The judgment is affirmed.

RUDKIN, C. J., MOUNT, PARKER, and DUNBAR, JJ., concur.