HARDISTER *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

## Opinion delivered May 31, 1915.

1. RESCISSION OF CONTRACT—FRAUDULENT REPRESENTATIONS—RELEASE FROM LIABILITY.—A contract will be rescinded on the grounds of fraudulent representations if the relative position of the parties is such, and their means of information such, that the one must necessarily be presumed to have contracted upon the faith reposed in the statements of the other, and where the injured party relied upon these fraudulent statements, and had a right to rely upon them.

2. RELEASE—PERSONAL INJURIES—VALIDITY.—Plaintiff was injured by a railway collision, he signed a contract releasing the railway company from liability for a certain consideration; later he sought to repudiate the release agreement on the ground that defendant's claim agent falsely told him that the attending physician had said that plaintiff was not seriously injured and would be up in a few days. *Held*, when the physician was in attendance and could have been seen by plaintiff, and where twenty-four hours elapsed between the time the claim agent made these statements and the time plaintiff executed the release, that plaintiff will not be heard to complain that he executed the release under the influence of the statements of the claim agent.

Appeal from Jackson Circuit Court; *R. E. Jeffery,* Judge; affirmed.

### STATEMENT BY THE COURT.

Appellant instituted this action against the appellee, alleging that he was a passenger on appellee's train, and that while on such train there was a collision through the negligence of the agents of the appellee by which he was seriously and permanently injured. He specifically described his injuries, and prayed for damages for pain and suffering and for loss of earning power, etc., in the aggregate in the sum of $40,000.

The appellee denied the allegations of the complaint as to negligence and the injuries and damages, and set up by way of affirmative defense the following:

"For and in full release, discharge and satisfaction of all claims, demands or causes of action arising from, or growing out of any and all personal injuries now ap-

parent, as well as those that may hereafter develop as a result of local freight No. 92 backing into or colliding with engine No. 73, at or near Bald Knob, Arkansas, on the 6th day of December, 1912, on which train (local freight No. 92) I was riding as a passenger, being in caboose of said local freight at time of collision or accident occurred. This includes any and all attorney fees, medical expenses or any and all other expenses that I have been out or may be put to as a result of injury or injuries received by reason of this collision $400.

Audited: F. W. Johnson, Auditor Disbursements.

Approved for payment. J. G. Liningood, General Auditor.

Received of the St. Louis, Iron Mountain & Southern Railway Company four hundred and no/100 dollars, in full payment for the above account. In consideration of the payment of the said sum of money, I, W. N. Hardister, of Batesville, in the county of Independence and State of Arkansas, hereby remise, release and forever discharge said company of and from all suits, actions, claims and demands of every class or character that I have now or may have against said company, growing out of any and all injuries in consequence of, or in any wise connected with the above accident.

In testimony whereof, I have hereunto set my hand this 13th day of December, 1912.

                                        W. N. Hardister.
Witness: A. W. Heyer, J. B. Collins.''

Appellant conceded in his pleadings and in his evidence that he had executed the purported release set up by the appellees, but alleged that he was induced to sign the same while he was weak and suffering, and while incapacitated on account of his injuries to execute such release, and that he was induced to do so ''by false and fraudulent statements made to him by one J. B. Collins, a claim agent representing defendant,'' to the effect that he (Collins) had talked with Doctor Gray, and ''Doctor Gray stated to him that he did not think that plaintiff was hurt to amount to anything, and that plaintiff would be out in a few days.''

The appellant, in his testimony, after describing the occurrence and the nature of the injuries which he had received, testified in regard to the release as follows:

"Mr. Collins, claim agent, came next Monday morning and for three or four days encouraged me for a settlement, and finally, December 13, made settlement. Mr. Collins made three visits each day, insisting for a settlement, and that I was not seriously hurt, and I told him that I did not think I was in shape to settle; but finally he came in there one night and told me that he had just come from Doctor Gray's office, that is, my family physician, and he told me that Doctor Gray had just told him that he didn't think I was seriously hurt, and would be out in a short time, and he insisted that we make the settlement under those conditions. I signed a paper purporting to be a release and a draft was given in payment. I relied on Mr. Collins, he seemed to be a very fair man, and I told him at the start that I would like to deal with him just like I would any other business man. So I thought the man was telling the truth, and I believed him. He influenced me in that way by telling me that Doctor Gray had told him that I wasn't seriously injured, and I would be out in a short time." Appellant's testimony further shows that Doctor Gray was treating him for the injuries he had received.

In his testimony on cross-examination, we find the following: "Thursday or Friday evening Collins offered the $400 and acceptance made next evening. Collins told me the night before that Doctor Gray had told him injuries were not serious, and I would soon be up. Relying upon statement of Collins as to his just coming from Gray's office and being told by Doctor Gray that I was not much injured and would soon be up, I decided to accept."

Doctor Gray testified that he treated the appellant for the injuries received in the collision; that he visited him on the 10th, 11th and 12th of December, but did not see him on the 13th. In regard to the alleged conversation with Collins, he testified as follows: "Had no talk with him (Collins) prior to December 13, 1912, in which I

stated to him that Mr. Hardister's condition was not serious, and that he would probably be up in a short time, or words to that effect." Doctor Gray testified further concerning the condition of appellant as to his injuries at the time he visited him just after the collision, as follows: "I found that he was suffering with a painful hip, very painful, and some    *    *    *    That is the principal thing he was suffering from. The hip was not fractured. The injury to his hip was all that he complained of, as I remember. There was not any physical evidence of any other injury to him except to his hip." On the 12th, the day on which the doctor paid him the last visit, he stated that appellant "seemed to be resting pretty well."

Among others, the court gave at the instance of the appellee, over appellant's objections, instructions to the effect that if, at the time of making the settlement, both parties believed that appellant had only a hip injury, and that there was no misrepresentation of facts as to the extent of his injuries, he could not recover; that before appellant would be permitted to take advantage of any statement which was the expression of an opinion as to the extent of his injuries, he must show that the opinion was given fraudulently and that he relied upon it, and would not have executed the release but for the expression of such opinion; that in order to vitiate the release on the ground of fraudulent misrepresentations such misrepresentations must be such as were peculiarly within the knowledge of the party making them, and upon which the other party had a right to rely, and did rely; that if the means of information as to the alleged misrepresentations were equally accessible to both parties, and the appellant failed to avail himself of the means of learning the truth, he could not recover.

The jury returned a verdict in favor of the appellee, and from a judgment in its favor this appeal has been duly prosecuted.

The conclusion we have reached upon the consideration of this record makes it unnecessary to state other facts.

*Bradshaw, Rhoton & Helm,* and *Campbell & Suits,* for appellant.

The instructions given on the question of the release err in ignoring the element of mistake and also in many particulars in not being based upon the evidence.

Appellant's requested instruction No. 5, to the effect that if the representations made to the plaintiff by the claim agent that he had just talked with Doctor Gray, and the latter had told him that the plaintiff was not permanently **injured, and would** soon be up, was false, and if the plaintiff relied upon such false statement, and if such false statement was the moving and controlling cause inducing the plaintiff to sign the release, then said release was void and not binding upon plaintiff, should have been given.   82 Ark. 20; *Id.* 105; 100 Ark. 144; 102 Ark. 187; 115 Ark. 297; 128 S. W. 855; 97 Ark. 269; 98 Ark. 48; 73 Ark. 42; 76 Ark. 88; 81 Ark. 264; 83 Ark. 575; 87 Ark. 614; 93 Ark. 589; 103 Ark. 341; 107 Ark. 363; 110 Ark. 182.

*Troy Pace* and *T. D. Crawford,* for appellee.

To affect the validity of a contract, fraud must be shown to have been acted upon by the party complaining of the fraud.   99 Ark. 438; 101 Ark. 95; 47 Ark. 148. There is nothing in plaintiff's testimony which tends to show that he was overreached at all.

Where it is sought to avoid a contract on the ground of fraudulent misrepresentation, the misrepresentation must relate to some matter material to the contract, upon which the other party had a right to rely, and did rely, to his injury.   If the means of information are equally accessible to both parties, they will be presumed to have informed themselves, and if they have not done so, they must abide the consequences of their own carelessness. 95 Ark. 136; *Id.* 523, 527.

Misstatement of that which is a mere matter of opinion will not constitute deceit.   95 Ark. 375; 13 Pet. 37; 66 Ala. 206; 48 Ia. 378.   Requested instruction 5 was properly refused.   The plaintiff knew the facts about his in-

jury better than any one else, and he had no right to rely upon the statements of the claim agent.

WOOD, J., (after stating the facts). (1) Among the tests announced by this court to determine whether contracts should be rescinded on the ground of fraudulent representations are the following:

"*First.* Was the relative position of the parties such, and their means of information such, that the one must necessarily be presumed to contract upon the faith reposed in the statements of the other; and,

"*Second.* Did the injured party rely upon the fraudulent statements of the other, and did he have a right to rely upon them?"

These were among the tests formulated by this court from all previous decisions, as early as *Yeats* v. *Pryor*, 11 Ark. 66, and stated succinctly in *Matlock* v. *Reppy*, 47 Ark. 164, and as there stated, they have been often quoted with approval in many subsequent cases, some of them quite recent. See *English* v. *North*, 112 Ark. 490. Applying these tests to the testimony of the appellant himself, and that of his witness, Doctor Gray, the court, had it been requested so to do by the appellee, should have directed a verdict in its favor.

It follows that the verdict and judgment were correct, even though some of the instructions which the court gave submitting the issue concerning fraudulent misrepresentations may have been erroneous.

(2) Appellant testified that appellee's claim agent Collins influenced him to sign the release by telling him that Doctor Gray had told him (Collins) that he (appellant) was not seriously injured, and would be out in a short time. But his testimony further shows that the proposition to pay him $400 as a consideration for his signing the release was made by the agent of the appellee one evening, and was not accepted by him until the next evening. Collins had told him the night before that Doctor Gray said appellant's injuries were not serious, and that appellant would soon be up. Thus it appears that appellant had a day to determine, after the alleged false representations were made, as to whether or not they

were true.  Doctor Gray was his family physician, was treating him for these very injuries, was in easy reach of appellant, and he could have easily ascertained from his doctor whether or not there was any truth in the representations made by Collins.  The relative position of appellant and his means of information was such that he can not in law be presumed to have signed the release upon the faith reposed by him in the statements of Collins; and, although he testified that he did rely upon such statements, he had no right, under the circumstances, to rely upon them, and can not escape the binding obligation of his contract of release upon the plea that he did rely upon them.

In *Delaney* v. *Jackson,* 95 Ark. 131-6, we said: "If the means of information as to the matters represented is equally accessible to both parties, they will be presumed to have informed themselves; 'and if they have not done so, they must abide the consequences of their own carelessness.' "  See, also, *McDonald* v. *Smith,* 95 Ark. 523-7. The means of information for appellant to determine what his physical condition was as a result of his injuries, and whether or not he would soon recover, was even more accessible to appellant than to the agent of the appellee who was making the alleged false representation.  Appellant, with the slightest diligence, could have ascertained, if he did not already know, what the doctor thought about his real condition, and whether or not he had made the statements attributed to him by appellee's agent.  The law holds him to the duty of making this inquiry, and will not allow him, under such circumstances, to vitiate a solemn contract into which he entered for a valuable consideration.  Such being our conclusion, the other questions pass out.  The judgment is correct, and it is affirmed.