[No. 15807.  Department Two.  August 24, 1920.]

## A. J. CORTEZ, *Appellant*, v. SPOKANE INTERNATIONAL RAILWAY COMPANY, *Respondent*.[1]

RELEASE (8)—VALIDITY—FRAUD—EVIDENCE—SUFFICIENCY. Under the rule that evidence of fraud must be clear and convincing, a release of damages is not shown to have been fraudulently obtained by statements of doctors that plaintiff's foot would be all right and as good as ever in thirty to sixty days, where the settlement was made at plaintiff's solicitation and upon his own terms, he afterwards worked again for defendant for eight months in the same capacity as at the time of his injury, and waited more than a year after the settlement before bringing an action for damages, and there was no evidence of bad faith on the part of the doctors, who were disinterested and gave mere expressions of opinion and not a guarantee.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered January 30, 1920, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

[1]Reported in 191 Pac. 820.

10—112 WASH.

*Plummer & Lavin,* for appellant.

*Allen, Winston & Allen,* for respondent.

MOUNT, J.—The plaintiff brought this action to re-
cover for personal injuries. Upon issues joined, the
case was tried to the court and a jury, and resulted in
a verdict in favor of the plaintiff for $6,680. There-
upon the defendant filed a motion for a new trial and
for judgment notwithstanding the verdict. On the
hearing upon these motions, the trial court denied the
motion for a new trial, but granted the motion for
judgment notwithstanding the verdict. The plaintiff
has appealed from the order of dismissal.

The facts may be briefly stated as follows: On the
9th day of October, 1917, the appellant was employed
as a switchman in the yards of the respondent in the
vicinity of Spokane. The respondent at that time was
engaged in interstate commerce. On that day several
carloads of logs were shipped over the line of the re-
spondent railroad from Idaho to the city of Spokane
in this state. These cars were placed upon a siding
upon a grade. The brakes were securely fastened
while the switching crew, of which the appellant was
one, were switching other cars. The switch engine
coupled onto these loads of logs. The appellant was
directed to release the brake on the car next to the
engine. In order to do this he was required to stand
on the drawbar between the engine and the loaded car.
While he was in the act of releasing the brake, a fellow
employee, by means of a rock, released the brake,
which let the loaded car come down against the appel-
lant's foot, thereby severely crushing the foot. The
bones of the little toe and the second toe of the right
foot were broken, and some bones were broken from
the great toe of that foot. Thereupon the appellant

was taken to the hospital and was treated by Dr. Doolittle, who was then in the employ of the railway company. The appellant remained in the care of Dr. Doolittle for one month, and then left the hospital. He called upon Dr. Doolittle about twice a week after that time. On the 15th day of February, 1918, the appellant proposed to the claim agent that a settlement be made, appellant stating that he desired to purchase a Ford car and go into the junk business. He offered to settle for $450. Mr. Shaw, the claim agent of the company, submitted this proposition to the railroad company. It was accepted and a settlement was made. The appellant signed a release for all claims of damages and was paid $450 in cash at that time. He had been paid by the company up to that time his average wages after he was injured. Thereafter, in May of 1918, he was employed by the respondent as a brakeman, and continued in that employment until December of that year. At that time, on account of slack business, the crew was laid off and the appellant demanded wages for the month of December, which being refused, he made the statement, "I will make you pay," and then, in 1919, brought this action for damages on account of the injuries received on October 9, 1917.

The single question presented upon this appeal is whether the court erred in granting the judgment notwithstanding the verdict, upon the ground that the evidence was insufficient to show fraud in the settlement. The principal defense made by the respondent was that the settlement had been made. In reply to this defense the appellant alleged that the settlement was void because it was fraudulently made.

Upon the trial of the case it appeared that Dr. Doolittle, who had charge of the appellant after he was brought to the hospital, had gone to Florida in the

early part of January, 1918. The appellant testified upon the trial of the case as follows:

"A. Yes, sir, I went to Doolittle, that is, just before he went to Florida, and he told me it was only a matter of thirty to sixty days at the outside. 'All you have to do is to get out and exercise that foot and you will gain in strength,' but he says, 'loafing around the way you are,' he says, 'throw that cane away and get out and go to work.' Q. When he said it would be thirty to sixty days, what did you say to him at that time as to whether or not he was positive of it or anything of that kind? A. I told him I hoped it would be so, and he said it surely would—not in those words, he said, 'Your foot will be all right.' Q. Now after he went to Florida did Dr. Brown still treat you? A. Yes, sir. I was up to see—I was up to Dr. Brown twice a week. Q. And what did he say about you being well in thirty to sixty days? A. He said just the same as Dr. Doolittle did. Q. Did you tell him at that time that you were negotiating a settlement with the company and wanted to know positively what the result would be? A. Yes, sir. Q. And what did he say to that? A. Well he says, 'You will be all right' just as Dr. Doolittle said my foot would be all right in thirty to sixty days. All it would need was exercise and to walk on it. I told him all the time that there was broken bones in there, that it was hurting me. He said there would be a cartilage formed around those bones, that 'it would be all right, you won't feel that at all.' Q. Did you rely upon that statement the doctors made to you? A. I certainly did. Q. Would you have signed that release but for that statement? A. No, sir, I would not. Q. Did Dr. Doolittle at the time he took charge of this foot take any X-ray plates of it so that he could see? A. Yes, he took them the next morning after I was injured. Q. Did he tell you that you would fully recover and that your foot would be as good as it ever was? A. He certainly did. Q. Never mentioned to you that it was his opinion, did not say, 'it is my opinion it will be,'—he guaranteed it to you? A. He certainly did. Q. He said it sure would happen?

A. He says, 'in thirty to sixty days you will never know your foot was hurt, it will be as good as it ever was, and you can do as good a job switching as any man working for a railroad.' Q. And told you, Mr. Cortez—how long after the injury was that? A. That was along the fore part of January."

Mrs. Cortez testified that, in January, Dr. Doolittle was called to her house on account of sickness, and she was asked the following question:

"Did Dr. Doolittle say anything at that time with reference—that is, to Mr. Cortez in your presence or to you in the presence of Mr. Cortez where he could hear it, as to when his foot would be all right? A. Yes, sir. I wanted Dr. Doolittle to look at his foot to see if he could relieve it, and he told me that I need not worry about the foot, that he had done all that any doctor could do for the foot, and that the foot was all right and that within a month or two months at the most he would be able to switch again, that is what he said."

Both Dr. Doolittle and Dr. Brown denied that any such conversations had taken place or that they made any representations as to when the foot would be well. We think it is plain from the evidence in the case that, even if Dr. Doolittle and Dr. Brown made the statements attributed to them by the appellant and his wife, these statements were mere expressions of opinion. This court has laid down the rule in a number of cases that, before a written contract can be set aside for fraud, the evidence upon that question must be clear and convincing. In the case of *Nath v. Oregon R. & Nav. Co.,* 72 Wash. 664, 131 Pac. 251, which was a case similar to the one now before us, we said:

"The law favors an amicable settlement of claims of this character, and when such a settlement appears to have been fairly made, and has not been secured by fraud, false representations or overreaching, it must be sustained."

Then, after citing cases:

"To avoid a settlement on the ground of fraud, requires clear and convincing proof. The most convincing evidence should be required in a case such as this, where the validity of the settlement was not questioned for more than two years. If respondent was defrauded and misled, as he now contends, he should have discovered that fact long prior to the commencement of this action. Yet he retained the money, worked for appellant at hard labor, and for more than two years made no attempt to rescind."

The same is true of this case. The appellant here made the settlement in February of 1918, and for two or three months after that time he was engaged in the junk business. Then, on the first of May, he went to work for the respondent again in the capacity of a brakeman and continued in their employ until December of that year. He brought this action in 1919, more than a year after the settlement. There is no evidence in the record that, between the time of the settlement and the time of the suit, any complaint was made that he had been defrauded. In the case of *Spratt v. Northern Pac. R. Co.*, 90 Wash. 592, 156 Pac. 563, we said:

"Releases in a case of this kind are like any other writing, and they are not to be lightly overcome. . . The testimony should be clear and convincing, especially so where, as in this case, the issue strips down to one charge that the one seeking to overcome it did not understand the paper which he admits was read to him."

In *Reynolds v. Day*, 93 Wash. 395, 161 Pac. 62, we said:

"Releases of this kind are like any other writing and are not to be lightly overcome. If they are not induced by fraud, false representations, or overreaching, they must be sustained. The testimony to sustain the charge of fraud must be clear and convincing," citing a number of cases.

It is argued by counsel for appellant that the statements made by Doctors Doolittle and Brown were fraudulent because they knew, or should have known, that appellant would not be well in the time stated, and that the question was for the jury whether the doctors' statements were expressions of opinion or the statement of a fact.

No bad faith on the part of either of these doctors is shown. They were not urging a settlement. The settlement was made at the voluntary solicitation of the appellant himself after he was walking around. It was made upon his own terms to the claim agent of the respondent before that agent had suggested a settlement, except to say to appellant that he was anxious to get him off his list.

At the time of the trial, neither of the doctors were in the employ of the respondent and they had no interest in the controversy except to state the truth. We do not mean by this that the trial court should weigh conflicting evidence, but it is the duty of the trial court to determine whether evidence upon the question of fraud is clear and convincing within the rule of the cases above cited, and if not so, to take that question from the jury.

We are satisfied in this case, after carefully reading the evidence, that, even though the doctors made the statements attributed to them, their statements were mere expressions of opinion and not a "guarantee" or "assurance" that the appellant would be well in thirty or sixty days, or any other time. There is no other evidence of fraud and no claim of fraud, except in the statements of the doctors to the effect that appellant would be well in thirty or sixty days. Under the rule that the evidence of fraud must be clear and convincing, we are satisfied that the evidence in this

case did not measure up to that rule, and that the court therefore properly concluded that the evidence upon this question was not sufficient to go to the jury, and that being so, it was his duty, under § 340 of Rem. Code, to direct a judgment in favor of the respondent.

The judgment appealed from is therefore affirmed.

HOLCOMB, C. J., TOLMAN, and BRIDGES, JJ., concur.