[No. 23528.   Department One.   March 8, 1932.]

JEAN HETRICK, *Appellant*, v. YELLOW CAB COMPANY *et al., Respondents.*[1]

*G. E. Lovell,* for appellant.

*Hamblen & Gilbert (Philip S. Brooke,* of counsel), for respondents.

BEELER, J.—The plaintiff brought this action to recover damages for personal injuries. The defendants denied all allegations of negligence, and affirmatively alleged that there was paid to the plaintiff the sum of three hundred dollars in full payment and satisfaction of her claim, and that, in consideration therefor, she executed and delivered to the defendants a written release discharging them from all liability. The plaintiff in her reply admitted the receipt of the three hundred dollars and the execution of the release, but alleged that she signed the release by reason of false and fraudulent representations.

Upon these issues, the cause was tried to the court and a jury, and at the conclusion of the plaintiff's case, the court sustained a challenge to the legal sufficiency of the evidence and directed the jury to return a verdict for the defendants. A judgment was entered dismissing the action, from which the plaintiff has appealed.

The sole question to be determined is whether the court erred in dismissing the action.

The facts are these: The appellant is fifty-four years of age, and has taught school for seventeen years. From her testimony, it is quite apparent that she has an orderly and well-disciplined mind. On November 23, 1929, while walking across the street intersection at First avenue and Lincoln street, in the city of Spokane, she was struck by a taxicab owned and operated by the respondent cab company, and was immediately taken to her room in the Victoria hotel in Spokane, where she was attended by her physician. On the following day, X-ray photographs were taken

which disclosed no broken bones or other internal injuries; that her physician called upon her daily for a period of eight days, during which time she was confined to her room.

On the morning following the accident, a claim agent representing the taxicab company called upon her at her hotel for the purpose of effecting a settlement, and after some discussion, he informed her he was going to interview her physician to ascertain the extent and nature of her injuries. The agent returned the next day, and according to the appellant's testimony, stated that the doctor had informed him that there was nothing wrong with her, and that all she needed was a "jollying up." On this second visit the agent offered her three hundred dollars, but no settlement was reached at this interview. The agent returned the following day, and after some considerable discussion, the appellant signed a release and received a draft for three hundred dollars. The next day, she informed her physician of the settlement, who apparently was somewhat displeased thereby. The appellant then held the draft for a period of six days, and on December 2, 1929, she endorsed it, and also signed another release, which appears on the back of the draft, and received the money.

The appellant on cross-examination testified concerning the execution of the release and the cashing of the draft, in part, as follows:

"Q. Now, then, when did he (Dr. Grove) next come to see you? A. Next day. Q. And he told you about your condition every day? A. Yes. Q. And you relied on his opinion as to your condition? A. Certainly. Q. And he called on you the next day? A. He called for eight days. Q. Eight days in a row? A. Yes. Q. And when Mr. Rusch had you sign the release, you told Mr. Rusch you didn't believe him? A. Yes, I did. Q. And you claimed he wasn't telling

138

·the truth what Dr. Grove had said? A. Yes. Q. And you saw Dr. Grove every day during that period of time? A. Yes. Q. And he told you about your condition? A. Yes. Q. And then you cashed this draft after that? A. I cashed the draft the next day after he had seen me. Q. He came to you on November 27th did he not? A. The date is there. Q. Will you look at this and refresh your memory; you got that on November 27th? A. Yes. Q. After Dr. Grove told you of your condition you signed the release? A. I signed the release the night the draft was given. He wouldn't give it until the release was signed. Q. I am talking about the release on the back here. You signed it after you had talked to Dr. Grove? A. He told me it wouldn't make any difference. It wouldn't be legal anyway. Q. And he told you about your condition at that time, didn't he? A. Yes.''

The appellant contends that she was induced to make the settlement by reason of the false representations of the claim agent to the effect that her physician said that her injuries were trivial and of no importance, and would have no permanent effect.

██ In the first place, her testimony that she relied upon the statements of the claim agent in making the settlement is neither clear nor convincing, and hence it was the duty of the court to withdraw the question of fraud from the jury.

''We do not mean by this that the trial court should weigh conflicting evidence, but it is the duty of the trial court to determine whether evidence upon the question of fraud is clear and convincing within the rule of the cases above cited, and if not so, to take that question from the jury.'' *Cortez v. Spokane International R. Co.*, 112 Wash. 289, 191 Pac. 820.

To the same effect see *Garver v. Great Northern R. Co.*, 56 Wash. 519, 106 Pac. 192; *Nath v. Oregon Railroad & Navigation Co.*, 72 Wash. 664, 131 Pac. 251; *Reynolds v. Day*, 93 Wash. 395, 161 Pac. 62.

In the second place, the appellant had no right to rely upon the statements of the claim agent, because her physician called upon her every day for a period of eight days, and therefore she had ample opportunity to test the veracity of the statements supposed to have been made by the claim agent. In other words, she had the means at hand to discover the truth or falsity of those alleged statements. Had she exercised the slightest diligence, she could have determined, if she did not already know, what her physician thought about her condition, and whether or not he had made the statements attributed to him by the claim agent. The law requires one to make reasonable inquiry. Under the circumstances of this case, the appellant can not vitiate a solemn contract which she executed and for which she received a valuable consideration.

Furthermore, not only did she sign the release on November 27th, at which time she received the draft, but on December 2, when she cashed the draft, she again signed a form of release appearing upon the back of the draft. During this period of five or six days, she saw and conferred with her physician daily. She thoroughly understood what she was about, and we are of the clear opinion that the evidence was wholly insufficient to carry to the jury the question of fraud.

In a case very similar to the one here under consideration, the supreme court of Arkansas said:

"Thus it appears that appellant had a day to determine, after the alleged false representations were made, as to whether or not they were true. Dr. Gray was his family physician, was treating him for these very injuries, was in easy reach of appellant, and he could have easily ascertained from his doctor whether or not there was any truth in the representations made by Collins. The relative position of appellant and his means of information was such that he cannot in law

be presumed to have signed the release upon the faith reposed by him in the statements of Collins; and, although he testified that he did rely upon such statements, he had no right, under the circumstances, to rely upon them, and cannot escape the binding obligation of his contract of release upon the plea that he did rely upon them." *Hardister v. St. Louis I. M. & S. Ry. Co.*, 119 Ark. 95, 177 S. W. 918.

The judgment is affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and HERMAN, JJ., concur.

