[No. 27028.   Department Two.   December 24, 1938.]

JACK MYERS, *Respondent*, v. C. DAVIS WEYERHAEUSER, *Appellant.*[1]

[1]Reported in 85 P. (2d) 1091.

*Clarke & Clarke* and *Clarence J. Coleman,* for appellant.

*Lawrence Seltzer, Earl Husted,* and *Claire Wheeler Seltzer,* for respondent.

ROBINSON, J.—This is an appeal from a judgment entered on a verdict in favor of Jack Myers, who was injured by an automobile owned and driven by the appellant. A former verdict in favor of Myers had been set aside by the trial judge for error in the instructions and

" . . . because the court's view of the evidence was such that it felt that the plaintiff should not be entitled to the benefit of the verdict until another jury had at least passed upon the issue."

The respondent received his injury at about seven p. m. on December 6, 1936, in front of Rubenak's restaurant, which is located north of Seattle on the Seattle-Everett four-lane highway. At that point, the highway is perfectly straight for a long distance.

Respondent, Myers, a colored musician and tap dancer, with a companion named Dyer, was driving from Everett to Seattle. He testified that he parked his car on the west side of the highway, opposite Rubenak's, intending to cross to the roadhouse to seek employment; that he got out, stood at the side of his car for a few moments to allow a car, which had been following him, to pass; that he then walked across the west strip of the pavement, paused for a moment, and looked to the south, that he saw the lights of an approaching car, perhaps two hundred and fifty yards away; that he then proceeded to cross the easterly strip of the pavement and had traveled six or eight feet beyond its edge into the graveled plot in front of the entrance to Rubenak's when he turned and looked back to see if he had left his lights burning, and, having satisfied himself on that point, was in the act of turning again to enter the roadhouse when he was struck down.

The respondent's companion, Dyer, whom he left sitting in the car, testified that he watched Myers cross the highway and saw him reach the graveled entrance in front of Rubenak's. He then turned his attention to lighting a cigarette, and did not see the accident or know that one had occurred until he was notified of it some fifteen minutes later.

The appellant testified that he had spent the weekend at the home of his fiancee in Seattle and was on his way to his home in Everett; that, as he approached Rubenak's, driving at forty or forty-five miles per hour, he saw a car parked across the road, and, seeing a dim figure standing near it, sounded his horn; that his attention was then diverted by a car in front of him turning into Rubenak's; that he slowed down then and turned toward the left side of the north-bound strip; that he suddenly saw, out of the left corner of his windshield, a dim form crossing the highway and immediately

jammed on his brakes and turned his car sharply to the right; that he felt the impact against the left door, right at his left elbow, and the window of that door shattered and the glass fell into his car; that his car brought up on the graveled plot in front of Rubenak's and some ten or fifteen feet from the pavement facing somewhat toward Seattle, and that respondent, Myers, was lying to the north at the easterly edge of the pavement.

No one saw the accident. The physical facts leave no question but that the respondent came into contact with the door on the left side of the automobile directly adjacent to the appellant driver. There is a great deal of evidence concerning the position of the car and the position of the respondent after the collision, and concerning the skid marks, which it would serve no useful purpose to detail. It will be sufficient to say that it was given by disinterested witnesses, and, for the most part, strongly tends to corroborate the appellant's version as to how the accident occurred.

The appellant took Myers to a hospital at Everett. Respondent's chief injury was a severe basal fracture of the skull, and he was treated mainly by Dr. Secoy, a specialist in such matters. Dr. Secoy testified that he was unconscious or irrational until about December 10th, and that his headaches ceased about the 24th. He said he seemed to be entirely recovered on the 25th, and was kept from leaving the hospital with difficulty.

On January 5, 1937, an insurance adjuster effected a settlement with Myers for the sum of $291, or, to speak more exactly, by agreeing to pay his hospital and doctor's bills, amounting to $216, and to give Myers the sum of $75. The release was pleaded as an affirmative defense, and, in reply, the respondent alleged:

"That said release procured by defendant was obtained from the plaintiff by falsely and fraudulently

representing that plaintiff was signing not a release of claim for personal injuries but instead a release from the custody and care of the Everett General Hospital, in Everett, Washington, and that the same did not in any way affect his claim for personal injuries sustained.

"That plaintiff sustained as a result of his injuries set forth in his complaint a serious head injury, to-wit, a fractured skull, and suffered a severe nervous and physical shock incapacitating him mentally and making him mentally incompetent to enter into such a release.

"That such a release was for a grossly inadequate amount and was entered into by the plaintiff without any advice of counsel or any consideration of its legal effect."

The appellant requested a number of standard instructions concerning the reciprocal rights of the parties as to right-of-way, negligence, contributory negligence, proximate cause, etc. Instead of giving them, the trial court adopted a somewhat unusual and more direct method. We quote instruction No. 1:

"You are instructed that if you believe by a preponderance of the evidence that the plaintiff had crossed the Pacific highway and was either standing about six or eight feet east of the east paved lane, or was just turning from such point to go into Rubenak's when he was struck, that the defendant was guilty of negligence which caused such injuries to plaintiff as you believe the plaintiff suffered from the accident. But you are further instructed that if you believe that the plaintiff was struck while the plaintiff was attempting to cross the east paved lane of the Pacific highway or while just stepping off of said paved highway, then the plaintiff, as a matter of law, was guilty of contributory negligence in attempting to cross said highway at the time that the car was as dangerously close as it would of necessity have had to have been to so strike him and in such event the plaintiff would not be entitled to recover regardless of whether or not you may believe the defendant to have also been negligent.

"In the event you determine by a preponderance of the evidence that the plaintiff was struck while or after

he had been standing about six or eight feet east of the pavement as aforesaid, and if you determine not only by a preponderance of the evidence but by clear and convincing evidence under these instructions that plaintiff is not bound by the release signed by him, then your verdict will be in favor of the plaintiff for such amount as will compensate plaintiff for his injuries according to the instruction hereafter given; otherwise your verdict will be for the defendant."

The appellant contends that (1) the evidence, and particularly the physical facts, show that respondent was guilty of contributory negligence; (2) that the evidence submitted by respondent to set aside the release was so insufficient that the court should not have submitted that issue to the jury, but should have held the release binding and effective, as a matter of law; (3) that the court erred in refusing to give appellant's requested instructions, and particularly in giving instruction No. 1; and (4) that a new trial should have been granted.

As to the first contention, it is urged, on appellant's behalf, that no reason was, or could be, suggested to account for his turning so sharply off the road, other than the one he himself gave, to-wit, that he did so to avoid striking the respondent, who was running across the pavement directly in front of his car. It is said, also, that the undisputed fact that the respondent came in contact with the *left* front door of his car, taken in connection with other evidence as to the relative positions of respondent and the car after the accident, skid marks, etc., prove, to the point of demonstration, that the respondent was struck near the center line of the east strip of pavement, and, therefore, he was guilty of contributory negligence as a matter of law. But this argument, impressive and persuasive as it is, is not in point on this assignment. The respondent testified that he was struck after having crossed the pavement and

having arrived at a spot six or eight feet from the eastern edge thereof. His evidence in that regard was in some degree corroborated by his companion Dyer. That this evidence made the issue of respondent's contributory negligence a matter for the jury, is not open to argument.

As to the second point, we have no means of knowing whether the jury found that the respondent was induced to sign the release through fraud, or whether it found that he was mentally incompetent at the time. Evidence was introduced tending to prove both fraud and incompetency. Appellant contends that this evidence was so unconvincing that the court should have passed upon the matter as a question of law, citing and quoting from the cases of *Cortez v. Spokane International R. Co.*, 112 Wash. 289, 191 Pac. 820; *Hetrick v. Yellow Cab Co.*, 167 Wash. 135, 8 P. (2d) 992; *Garver v. Great Northern R. Co.*, 56 Wash. 519, 106 Pac. 192; and *Reynolds v. Day*, 93 Wash. 395, 161 Pac. 62. A quotation made from the *Hetrick v. Yellow Cab Co.* case is fairly typical of the quotations made from the others, and reads as follows:

"The appellant contends that she was induced to make the settlement by reason of the false representations of the claim agent to the effect that her physician said that her injuries were trivial and of no importance, and would have no permanent effect.

"In the first place, her testimony that she relied upon the statements of the claim agent in making the settlement is neither clear nor convincing, and hence it was the duty of the court to withdraw the question of fraud from the jury."

We think, however, that the rule invoked has been somewhat misunderstood. It is not meant by this language that the court shall pass upon the credibility of witnesses, or must be convinced that they are telling the truth, before submitting the issue to the jury. The

evidence must be clear and convincing, assuming it to be true; that is, it must be substantial, and, if true, well calculated to prove the allegation.

It is said, in *Pierce v. Seattle Electric Co.,* 78 Wash. 167, 138 Pac. 666:

"In cases of this kind, the rule appears to be that, where a party claims there was fraud or overreaching in the settlement, the burden is upon the one making the charge to sustain it by evidence which is clear and convincing. . . .

"In this case, if the evidence of the plaintiff and her daughter is to be believed, then there was sufficient evidence on this question to sustain the verdict of the jury. Where the evidence is conflicting, and the evidence offered on the part of the plaintiff is sufficient if believed by the jury to sustain the charge of fraud, the question is for the jury to determine. It is not the province of this court to weigh the conflicting evidence and determine the question *de novo.* The court can only inquire as to whether, if the evidence were undisputed, it could be said to be clear and convincing."

See, also, *Bjorklund v. Seattle Electric Co.,* 35 Wash. 439, 77 Pac. 727; *Westby v. Washington Brick etc. Co.,* 40 Wash. 289, 82 Pac. 271; *McClure v. Wilson,* 147 Wash. 119, 265 Pac. 485; *Sauers v. Mutual Benefit Health & Acc. Ass'n,* 187 Wash. 262, 60 P. (2d) 103.

We have examined the whole of the extensive evidence submitted by both parties as to this issue, and we are of the opinion that it was the duty of the court to submit it to the jury.

We have not overlooked the appellant's contention that the alleged settlement was subsequently ratified. At the time the release was signed, the adjuster gave the respondent ten dollars in cash, and two days later respondent himself called at the offices of the adjustment bureau in Seattle and received the balance of the seventy-five dollars, to which he was personally entitled by the terms of the settlement. If incom-

petency alone had been relied upon, there would be some force to appellant's contention. The respondent testified, however, that the transaction was not represented to him in the first instance as a final settlement. Assuming that to be true, and the jury had the right to so find, nothing is shown to have happened in the ensuing two days which it can be said should have induced the respondent to suppose that it was, after all, a final settlement. His act in collecting the money two days later cannot, therefore, be given any greater significance than his act in signing the original release.

We come now to the question of the instructions. The issues in the case were simple and direct. The appellant testified that the respondent was struck down about the middle of the eastern strip of paving, while running across the road. The respondent testified that the appellant, without warning, turned sharply off the pavement and ran him down, although he was then standing at least six or eight feet from the edge thereof. Neither litigant nor any witness recognized any middle ground. That being the case, it seems to us that the court was not in error in giving, instead of the usual general instructions requested by the appellant, the simple and direct instruction which we have hereinbefore quoted.

Furthermore, it seems to us that that instruction was distinctly favorable to the appellant. The appellant's version of the accident was highly probable, the respondent's version, especially in view of the physical facts, highly improbable; and, yet, the court bluntly told the members of the jury that, if the respondent was struck in the middle of the road, he would be guilty of contributory negligence; and, further, that, to find a verdict in his favor, they would have to determine from a preponderance of the evidence "that the plaintiff [respondent] was struck while or after he had been

standing about six or eight feet east of the pavement," and they would further have to determine,

". . . not only by a preponderance of the evidence but by clear and convincing evidence under these instructions that plaintiff is not bound by the release signed by him."

This instruction was, under the circumstances, very favorable to the appellant. The members of the jury were plainly instructed that, in order to find a verdict against him, they must believe something which, he even now strenuously contends in this court, reasonable men could not possibly believe.

Finally, it is assigned as error that the trial court refused to grant a new trial. It could have been granted only upon some such ground as that the verdict was contrary to the evidence. We find in the statement of facts a long and carefully prepared memorandum decision rendered by the trial judge in passing upon the post trial motions, in which, among other things, he clearly indicates that, if the case had been tried before him, instead of a jury, he would have resolved the principal questions of fact in favor of the appellant. He concluded his discussion of the matter with the following statement:

"It appears to me that it would be an invasion of the jury's province for the court to disregard the verdict of two juries. Plaintiff, as he had a right to do, wished the decision of a jury of twelve rather than that of one trial judge. Certainly if the trial judge should continue granting new trials until a verdict would be the same on the facts as his decision would have been on the facts, then the right of trial by jury would be nullified."

It is sufficient to say that the question as to whether or not a verdict should be set aside as against the evidence is one which is peculiarly within the discretion of the trial judge, since he sees and hears the witnesses.

An appellate court will not interfere with his decision in such a matter, except under most extraordinary circumstances.

Since we find no error in law, the judgment appealed from must be affirmed.

MILLARD, MAIN, BEALS, and BLAKE, JJ., concur.

[1] Reported in 85 P. (2d) 1078.