[No. 28819. Department Two. December 30, 1942.]

W. B. SCHULZ et al., Respondents, v. SPOKANE UNITED RAILWAYS et al., Appellants.[1]

[1]Reported in 132 P. (2d) 366.

44

*Post, Russell, Davis & Paine,* for appellants.

*Michael J. Kerley,* for respondents.

SIMPSON, J.—This action was instituted by plaintiffs to recover damages for the death of their son, caused by the operation of an automobile belonging to defendant Spokane United Railways and driven by defendant Larsen. Trial before the court, sitting with a jury, resulted in a verdict awarding to plaintiffs the sum of $1,631.38. Defendants' motions for judgment n. o. v., or, in the alternative, for a new trial, were denied, and defendant has appealed.

The assignments of error are in denying appellants' challenge to the sufficiency of the evidence and their motion for judgment at the close of the entire case, in denying motion for judgment notwithstanding the verdict, and in entering judgment on the verdict.

It is unnecessary to set forth the facts regarding the accident which resulted in the death of respondents' son, for the reason that appellants do not challenge the correctness of the judgment in so far as those facts are concerned. The controversy relates to the effect of a purported settlement made by respondents prior to the beginning of this action.

The accident occurred November 22, 1939. November 30th, respondents' son died as the result of the injuries he received. December 6, 1939, a settlement was made by respondents, as indicated by a written instrument which read:

"Release of all Claims

"Know All Men by These Presents:  That I, W. B. Schulz and Florence Schulz for the sole consideration of One Thousand Seven Hundred Fifty and No/100 Dollars, to me in hand paid by the Spokane United Railways, a corporation, the receipt of which is hereby acknowledged, have released and discharged and by these presents do, for myself, my heirs, executors, administrators and assigns, release and forever discharge the said Spokane United Railways of and from all claims, demands, damages, actions or causes of action on account of injuries both to person or property resulting or to result from fatal accident to Floyd H. Schulz, our son which occurred on or about the 22nd day of November, 1939, at or near Gardner Avenue and Monroe Street, Spokane, Washington and of and from all claims or demands, actions or causes of action whatsoever in law or in equity which I, my heirs, executors, administrators, or assigns, can, shall or may have by reason of any matter, cause or thing whatsoever prior to the date hereof.

"In Witness Whereof I have hereunto set my hand and seal this 6th day of December, 1939.

In the presence of:       W. B. Schulz       (Seal)
Chas. B. Deitrich     Mrs. Florence Schulz (Seal)"

The evidence relative to the release which is most favorable to respondents is as follows:  December 4, 1939, Chas. B. Deitrich, claim agent for appellant Spokane United Railways, went to the home of respondents at their request and commenced negotiations for a settlement.  Respondent W. B. Schulz testified that Deitrich advised respondents not to employ an attorney for the reason that the attorney would take half of the amount obtained; further, that Mr. Deitrich represented that the laws of the state of Washington only permitted the recovery of one thousand five hundred dollars in cases of this nature. Other testimony of Mr. Schulz, concerning the conversation with Deitrich, was as follows:

"Q. And what was that conversation then, if any? A. Well, I just had turned around and had upped him $250 over the $1500 that he had stated would be the settlement the day on his first appearance. Q. And did Mr. Deitrich say anything to that? A. If I remember right, he just said we wouldn't argue over the raise of that amount; he would make settlement under those grounds."

Mrs. Schulz testified as follows:

"Q. I will ask you to state whether or not on either of his visits Mr. Deitrich said anything about what the law was in the State of Washington. A. Yes, I got that; that he said that the state would award $1500, and had my boy been twenty-one, we wouldn't have got a cent. . . . Q. Now, at the time he was out there the first time, you say that a statement was made about $1500? A. Yes, to my recollection; yes. Q. I beg your pardon? A. Yes, to my recollection. He mentioned that $1500 was all we would be able to get. Q. And you remember very clearly that Deitrich said that that is all the state law would allow? A. Yes. Q. That was the first visit? A. I do remember that."

She further testified that respondents had not consulted an attorney prior to the settlement thereof, though it was admited that, after the accident and before the settlement, respondents had occasion to visit with M. E. Mack, a member of the Spokane bar.

Respondents contend that the evidence to which we have just referred justified the trial court in submitting the case to the jury. Appellants, on the other hand, maintain that under the facts respondents did not prove fraud by that clear, cogent, and convincing evidence necessary in such cases. They argue that respondents could not claim fraud when they had the opportunity to obtain legal advice and did not secure it, and further that the charged misrepresentation was one of law upon which fraud cannot be predicated. A written instrument is a solemn declaration

of the matters therein contained and cannot be lightly set aside. A written instrument may be set aside or modified only by evidence of the most positive character. Moreover, the settled law of this state is that fraud is never presumed, but must be proven by evidence that is clear, cogent, and convincing.

The answer to the question before us is definitely indicated by the decision of this court in *Garver v. Great Northern R. Co.*, 56 Wash. 519, 106 Pac. 192, followed in *Hetrick v. Yellow Cab Co.*, 167 Wash. 135, 8 P. (2d) 992.

In the *Garver* case the facts disclose that the plaintiff was injured while unloading freight from a car of the defendant railway company and thereafter signed a release in payment of five hundred dollars, but contended that the settlement had been fraudulently obtained, that he did not know it was a settlement, that he understood that he was being compensated for loss of time only, and that he reposed special confidence in the claim agent and the physicians of the company who misrepresented the probable extent and duration of his injuries. The trial court granted a motion for a directed verdict, which was affirmed by this court.

It will be noted that the facts in the cited case and the one before us are essentially alike. The evidence here shows that respondents were able to read the release and had at least one day to consider the settlement before they signed it and received two hundred fifty dollars more than was offered in the first instance. They had the opportunity to advise with a friendly lawyer as to whether the state law limited recovery to one thousand five hundred dollars. There was no confidential relation existing between respondents and the claim agent. Respondents received and retained the amount named in the agreement, and the fact that they received more than was at first offered and more

than the amount the agent represented as allowable under the laws of this state, contradicts their contention that they depended upon the representations made by Deitrich.

We hold that the evidence produced at the trial of this case did not sustain the charge of fraud by that clear, cogent, and convincing evidence necessary to set aside the written instrument which evidenced the settlement made by appellant railways and respondents.

The judgment is reversed, with instructions to dismiss the action.

ROBINSON, C. J., BEALS, MILLARD, and BLAKE, JJ., concur.

[1]Reported in 132 P. (2d) 368.