[No. 32089. Department One. January 15, 1953.]

ALLEN W. PORTER, as *Administrator, et al., Appellants*, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, *Respondent*.[1]

[1]Reported in 252 P. (2d) 306.

*Crippen & Flynn,* for appellants.

*Byron E. Lutterman, Chas. F. Hanson, M. E. Sharp,* and *Robert B. Abel,* for respondent.

GRADY, C. J.—Actions which were consolidated for the purpose of trial were instituted by Allen W. Porter, as administrator of the estate of Alice G. Buckman, deceased, and June Fors against the Chicago, Milwaukee, St. Paul & Pacific Railroad Company to recover damages arising out of a collision between an automobile being driven by Alice G. Buckman and a railroad boxcar propelled by the defendant. The cases were tried before a jury. A verdict for the defendant was returned. The court denied motions for a judgment notwithstanding the verdict and for a new trial and entered judgments dismissing the actions.

The substance of the two complaints is that about 3:30 o'clock in the morning of the 28th day of February, 1951, Alice G. Buckman, accompanied by June Fors, drove her automobile in a southerly direction along Pacific avenue in Tacoma. As the automobile approached the intersection with 26th street, the overhead signaling device turned green. The driver proceeded across the intersection. At this time, the defendant was moving some freight cars along its spur track, which crosses Pacific avenue at a point 112 feet south of the traffic light. There was a collision between the front boxcar and the automobile, resulting in the death of Alice G. Buckman, damage to her automobile, and injuries to the person of June Fors. The complaints charged negligence on the part of the defendant in failing to give adequate warning of the entry of the freight cars into Pacific avenue, in failing to yield the right of way to the automobile and in negligently operating the train of cars.

The answer of defendant denied negligence on its part and affirmatively pleaded contributory negligence on the part of the driver of the automobile and her guest.

The specific assignments of error are directed to the rejection of offered proof, the giving of certain instructions, the refusal to give a proposed instruction, and the failure to grant the motion for a new trial.

The respondent calls our attention to a noncompliance on the part of appellant with Rule on Appeal 34 (8), 34A Wn. (2d) 36, which provides:

"In all cases whenever any error is predicated upon a ruling relative to an instruction given or proposed, it will be necessary to include in the statement of facts all the instructions given by the court and those proposed instructions concerning which error is assigned."

The instructions given to the jury by the court are not included in the statement of facts, but appear in the clerk's transcript over the signature of the trial judge. The proposed instruction which the court refused to give is in the statement of facts.

In accordance with the rule, if a party desires to have the court review any claimed error in either the giving of any

instruction or in refusing to give one that he may have proposed, he must have included in the statement of facts all of the instructions given by the court and the proposed instruction. The principal reason for such requirements is that we must consider all of the instructions as a whole in determining whether the court erred in the particular instance claimed. In the case of a refused instruction, it may appear that the court has given one of sufficiently like import, or it may appear that such instruction advanced a theory materially modifying or directly at variance with that adopted by the court in the instructions given.

A strict application of the rule may seem harsh when the instructions are in the transcript and are identified by the signature of the trial judge, but such rule was promulgated for a purpose and in aid of orderly appellate procedure. We said in *Hill v. Tacoma,* 40 Wn. (2d) 718, 246 P. (2d) 458, that if such rules are to serve their purpose they must be enforced; otherwise, they should be abandoned. This rule has been in existence for a long time and should be familiar to the members of the bar. The situation presented illustrates the time-honored admonition that one should not rely too much on his memory of procedural statutes and rules, but should refer to his code or book of rules for guidance.

The conclusions we have reached on the other assignments of error are based upon the following situation, which we gather from the map received in evidence and evidence disclosed by the record, the greater part of which had reference to physical facts which are not in substantial dispute, except as to the position of the flagman at the exact moment of the happening of the accident.

Pacific avenue runs in a northerly and southerly direction in the city of Tacoma. For convenience we shall refer to the part of the avenue north of the intersecting lights as north Pacific avenue and that south thereof as south Pacific avenue. Twenty-sixth street comes into Pacific avenue from the east. South Tacoma way comes into Pacific avenue from the southwest. Twenty-sixth street and south Tacoma way are a part of state highway 99. Delin street comes into Pacific

avenue also from the southwest and lies substantially parallel with and a short distance southeasterly from south Tacoma way. The convergence of the several streets mentioned forms an irregular intersectional area as defined by RCW 46.04.220. Traffic is regulated by three overhead signal lights showing alternately red and green.

At the southeast corner of Pacific avenue and Twenty-sixth street is a Union service station, and south of the service station is the place of business of the Puget Sound Auto Electric Co. Between these two places of business is a spur track owned and operated by respondent. The track enters south Pacific avenue, gradually curving as it crosses the avenue; also as it passes the end of Delin street and as it enters south Tacoma way. Traffic over the spur track is not controlled by any of the intersection lights that signal traffic on Pacific avenue or the other intersecting streets. The track is approximately 112 feet southerly from the traffic lights. Its use is limited by city ordinance to the period between the hours of one o'clock and five o'clock a. m. Its usual use is one switching train a night each way.

The deceased drove her automobile along north Pacific avenue, and as she approached the intersection the signal light turned green and she entered south Pacific avenue.

A train of cars consisting of a boxcar in the lead, an empty gondola car, and a low syrup tank car was approaching the intersection. It was propelled by a diesel switch engine in a backup position. The engine was equipped with a backup light of the size, power, and intensity of a standard engine headlight and shone horizontally over the top of the tank and gondola car and onto the rear end of the boxcar in the lead. Before the lead car entered Pacific avenue, the train was stopped. The flagman testified that he stepped out into the street, and seeing no automobile traffic on Pacific avenue, signaled the engineer to proceed; that he had a lantern which gave a white light; that as he advanced across the street he swung the lantern in a horizontal arc, so that the spotlight pointed towards traffic that might be approaching from either direction; that he saw the automobile of the deceased

approaching; that he waved his lantern toward the windshield of the car; that he then gave an emergency signal to the engineer known in railroad parlance as a "washout" signal. Appellant Fors testified that, after the automobile passed the green light, she was attracted by a white light on her right "practically on the curb. Right beside Delin Street —close to Delin Street that goes up by the Lincoln High School." She stated that it appeared to be like a white flashlight "like somebody, maybe, had a flat tire or stalled their car and were signaling for help—for someone to stop and assist them"; that before she could say anything to the deceased about the light "the train loomed up and hit us."

The left front coupler or drawbar of the freight car and the left front fender of the automobile came in contact with each other. The train ran from five to ten feet before it came to a stop.

We have not considered which version of the use of the flashlight is correct, and our only purpose of making reference to it is in connection with the question of adequate warning by respondent to traffic on Pacific avenue of the approach of its switching train.

Appellants made known to the court they desired to prove that there had been previous accidents at the same crossing, and also that on other occasions respondent had used fusee flares when crossing south Tacoma avenue. The reasons for the making of such proof advanced by appellants were that it would establish the extrahazardous situation created by respondent, knowledge and recognition thereof by it, and the need for a greater amount of care in warning the traveling public when entering the streets being crossed than was exercised on this occasion. The offered proof was rejected by the court.

■ When an accident similar to the one now under consideration happens at a place where a switching track crosses a street, proof of other accidents at the same crossing at other times under the same or similar circumstances may be received for the purpose of showing the existence of a dangerous condition or knowledge thereof; but such evidence

is unnecessary where, as in this case, the dangerous condition is open and apparent and the railroad company has knowledge of its extrahazardous character. *Tonning v. Northern Pac. R. Co.*, 180 Wash. 374, 39 P. (2d) 1002. Upon the questions of existence of danger and knowledge thereof, the ruling of the court was correct.

The respondent contends that it performed its full duty to the deceased and her guest in warning them of the presence of the train on south Pacific avenue by waving a lantern having a white light. We so decided in the situations presented by the records in the cases of *Tonning v. Northern Pac. R. Co., supra,* and *Watson v. Northern Pac. R. Co.*, 37 Wn. (2d) 374, 223 P. (2d) 1057. If we should accept these cases as controlling, evidence of other accidents would not be material on the question whether sufficient warning was given. However, the record presents several factors either not existing in those cases or having a much different probative value in determining the sufficiency of the warning.

The green light at the street intersection was an invitation to the decedent to proceed and enter south Pacific avenue. The spur track was used only in the night time between specified hours and then infrequently. The great bulk of travel on Pacific avenue takes place during the time the track is not in use. It is fair to assume that most travelers along Pacific avenue are not aware that the track is used at all and believe that its use has been abandoned. When these factors are considered, it becomes clear that in determining whether the respondent exercised reasonable and ordinary care in giving warning to the deceased, it would be helpful to the jury to know that on previous occasions when crossing south Pacific avenue the respondent gave warning with red fusee lights. This would indicate that the respondent regarded the use of red lights as necessary to adequately warn rather than the flashlight carried by the switchman and usually used to signal to the engineer. If the other accidents happened in cases where drivers of automobiles had acted upon the invitation extended by the green intersection light and had suddenly come upon a crossing train, that would be

persuasive evidence from which a jury might conclude that more adequate warning was imperative. Before rejecting the offers of proof for the latter purposes, inquiry should have been made in the absence of the jury, and if it appeared that the previous accidents happened under the same or similar circumstances as in this case, evidence thereof should have been received.

The courts and textwriters are in substantial accord that when a train of cars enters a street to cross it, vehicle traffic must yield to it the right of way. While occupying the crossing, the train gives actual notice of its presence, and this supersedes all other warning. If upon entering into a street a brakeman takes appropriate measures to warn traffic thereon, the railroad company discharges its duty of care towards them. These rules, however, cannot be given full application if unusual circumstances or conditions exist making the crossing so peculiarly dangerous that prudent persons cannot use the same with safety unless extraordinary measures are used.

When such cases as those above cited, *Hopp v. Northern Pac. R. Co.*, 20 Wn. (2d) 439, 147 P. (2d) 950; *Hendrickson v. Union Pacific R. Co.*, 17 Wn. (2d) 548, 136 P. (2d) 438, 161 A. L. R. 96, and what is stated by the author in 74 C. J. S. 1336—1344, are considered in connection with all of the facts and circumstances surrounding this particular accident, and especially such factors as the location of the track with reference to the street intersection, its infrequent use, the visibility, and the invitation to proceed across the intersection by the turning of the red light to green, it is apparent that the crossing must be classed as extrahazardous and so peculiarly dangerous at the time and under the conditions existing when the accident happened as to justify the conclusion that the warning given by respondent was inadequate.

It is only in very exceptional cases that an appellate court should disturb the action of a trial court in refusing to grant a new trial upon the ground that the verdict of the jury is contrary to the evidence. *Myers v. Weyerhaeuser*, 197

Wash. 407, 85 P. (2d) 1091. Such question is primarily for the trial court to determine, and a great latitude of discretion must necessarily be allowed, but the appellate court has the power and duty to determine whether such discretion has been properly exercised.

Our examination of the record convinces us that a most unusual situation existed. We feel that when deceased saw the signal light turn green, she was justified in proceeding through the intersection. It does not appear that any warning whistle was blown as the train was about to enter the street. There is evidence that the bell on the engine was ringing, but it was three cars back of the front end of the train and apparently did not aid as a warning. The engine light shone upon the back end of the front car. It could well appear to a driver of a car that the white light exhibited was that of a flashlight in the hands of a pedestrian on the street.

Because of the failure of the court to make inquiry and determine whether evidence of other similar accidents was relevant for the purposes stated, and its refusal to grant a new trial upon the ground that the warning given was inadequate, the judgment is reversed, and the case is remanded for the vacation of the judgment and for the entry of an order granting to appellants a new trial.

SCHWELLENBACH, MALLERY, DONWORTH, and WEAVER, JJ., concur.

March 31, 1953. Petition for rehearing denied.