[No. 26535. Department Two. April 3, 1937.]

E. R. ULLRICH *et al.*, *Respondents*, v. COLUMBIA & COWLITZ RAILWAY COMPANY *et al.*, *Appellants.*[1]

*Charles H. Paul* and *Joseph T. Woods,* for appellants.

*Edgar P. Reid,* for respondents.

TOLMAN, J.—This is an action for personal injuries suffered in a collision between an automobile, occupied and operated by the plaintiffs, and a logging train, operated by the defendants, at a crossing within the limits of the city of Longview. The case was tried to a jury, which returned a verdict in favor of the plaintiffs. From a judgment on the verdict, the defendants have appealed.

Among the many assignments of error are two which are based upon the refusal of the trial court to sustain the challenge to the sufficiency of the evidence at the close of all of the testimony and its refusal to grant the defendants' motion for a directed verdict. These assignments are all that we find it necessary to con-

[1] Reported in 66 P. (2d) 853.

sider, but their consideration requires a statement of that part of the evidence which bears upon the charges of negligence.

The respondents are husband and wife. They were occupying the family car, which was being operated by the husband. The husband, at least, had been a resident of the neighborhood since a time before the railroad was constructed. He was familiar with the crossing and the physical conditions in its vicinity.

The crossing was lighted by a three hundred watt electric flood light, placed at a height of about twenty feet, and located at the northeast corner of the intersection. The light was a standard light for the purpose for which it was intended, and the driver of the car testified that he saw it and was aware of what it signified when he was still two hundred feet distant from the crossing. There was a white cross-arm railway crossing sign, about fifteen feet high, at the southeast corner of the intersection. The time was about 8:30 in the evening of a March day, and there was a fairly heavy rain falling with some wind, but not a violent storm.

There are charges in the complaint that the view of the railroad from the highway was obstructed, but the evidence is undisputed that the view of the railroad to the south was unobstructed for a distance of approximately four hundred feet, and that the view to the north was unobstructed for one hundred yards, or more, except possibly for one comparatively small clump of willows growing about five feet in height above the railroad track and situated some sixty feet north of the highway crossing. There is no testimony to the effect that any possible obstruction in any way contributed to or caused the accident.

The respondent husband testified that he was driving at about fifteen miles per hour, going east, and

thus approaching the crossing from the west. The first railway crossing sign, called a reflector, was situated three hundred feet west of the crossing. The driver saw this reflector, knew that it indicated the railroad crossing three hundred feet farther on, and testified that he then slowed down to a speed of ten or twelve miles per hour and proceeded toward the crossing. Both the highway and the railway track were practically level, except that in the last one hundred feet there was a rise of 1.3 feet in the highway, the most of the rise being in the last fifty feet. There was nothing whatever to obstruct the driver's view of the crossing except the natural darkness and the rain.

At this time, the crossing was actually occupied by appellants' logging train, moving toward the south at a speed not in excess of twenty-five miles per hour. The train consisted of seventy empty logging cars, each fifty feet in length, with bumpers at each end and a center space between bumpers. Connecting the front and rear truck of each car was a reach, or timber, eight inches thick, the bottom of which would be 34½″ above the rail upon which the car traveled. The length of the center skeleton portion of each car was apparently less than half the total length of the car, and also it appears that these logging cars constituting this train were the usual type of logging car, almost universally used by all engaged in transporting logs by rail in the timbered portions of this state. The train and the cars of which it was composed were in all respects such as might be expected at that particular crossing at any time.

The respondents, and a passenger riding with them in their car, each testified that, as they thus slowly approached, the crossing seemed to be clear until their automobile was within six or eight feet of the railroad track when each suddenly saw something moving and

the driver promptly stopped the automobile, but so near to the moving train that something projecting therefrom struck the automobile and caused the damage of which complaint is made.

The automobile came in contact with a car at about the middle of the train, which was 3,500 feet or more in length, hence the engine with its headlight had probably passed the crossing before respondents' automobile had reached the reflector sign three hundred feet west of the track, and the caboose, with its side lights, had not yet come within the view of one looking directly along the highway and at the crossing.

The respondents seem to make some point of the fact that bullets had been fired through the reflector of the crossing light and that the reflector was somewhat corroded around the bullet marks, but no one attempted to say that those defects in the reflector had any effect upon the situation. All such evidence as was offered upon that subject is to the contrary. Also, respondents point out that the reflector light was not directly over the intersection, but somewhat to the north and east of it. This fact, likewise, failed to establish anything from which an inference of negligence could reasonably be drawn, because there was no proof that the location of the light in the position shown had any tendency to lessen its efficiency as a crossing light.

We find nothing in the obstacles to the view, if any, or in the positions and conditions of the crossing light, its reflector, or the cross-arm warning sign which stood to the east of the track, which could afford any ground for a finding of negligence on the part of the appellants.

If negligence is to be found, it must arise out of the operation of a train composed of so-called skeleton logging cars, and it is difficult, indeed, to understand how anyone could reasonably anticipate that

harm would come from operating such a train at a modest rate of speed over a well lighted crossing.

"A judicial definition bringing out with admirable conciseness the elements of actionable negligence is as follows: 'Negligence is an unintentional breach of a legal duty causing damage reasonably foreseeable without which breach the damage would not have occurred.'" 45 C. J. 632.

"The actual result of an act or omission is not controlling in determining whether or not it was negligent, nor is the duty of the person doing or omitting an act to be estimated by what, after an injury has occurred, then first appears to be a proper precaution, but the question of negligence must be determined according to what should reasonably have been anticipated, in the exercise of ordinary prudence, as likely to happen." 45 C. J. 660.

If, in any of the things herein mentioned, there was any breach of a legal duty, which, to say the least, is extremely doubtful, there certainly was nothing in any of them which would reasonably suggest possible damage to any one, and therefore damage was not "reasonably foreseeable."

Lights, signs and other warnings are for the purpose of giving notice of or assisting the traveler, about to cross the track, to see an approaching train. When a train actually occupies the crossing, that in itself supersedes all other warnings and gives actual notice by its own presence. *Wink v. Western Maryland R. Co.,* 116 Pa. Super. Ct. 374, 176 Atl. 760; *Ausen v. Minneapolis, St. P. & S. S. M. R. Co.,* 193 Minn. 316, 258 N. W. 511.

The respondents' case seems to be founded upon the case of *Christensen v. Willamette Valley R. Co.,* 139 Ore. 666, 11 P. (2d) 1060. A careful reading of that well considered case at once reveals a vital distinction in its facts from those which we are here considering.

There, it was charged in the complaint and the evidence tended to show:

" 'At said time the defendant was operating on schedule its regular passenger motor car on its said railroad, which was traveling in a Southeasterly direction from Oregon City, to Molalla at or near Robbins Station. Said passenger car, which was then carrying passengers, was operated by a motorman on the front end thereof, and was lighted with electric lights within, and had the customary red and green lights on the rear of said car, which were lighted. . . . Attached to and on the rear of said passenger car, the defendant, at said time and place, was hauling five of said empty log trucks. There was not a green or red light or any kind of light whatsoever on any of said log trucks, neither was there a brakeman or signal of any kind whatsoever to indicate to the plaintiff or to the traveling public the presence of said log trucks on the rear of said passenger car.

" 'As the plaintiff was proceeding in his automobile aforesaid, he saw said passenger car approaching at a considerable distance and saw the green and red light upon the rear end of said passenger car, but did not see and was unable to see the said log trucks. As plaintiff approached said crossing, he brought his automobile to a complete stop, at a reasonable and safe distance from said railroad track at said crossing. After said passenger car had proceeded over said crossing the plaintiff, not knowing of the presence of said log trucks, proceeded on his way and while so proceeding and when within a short distance of said railroad track his lights reflected upon and he saw the beam or connecting rod of one of said trucks. Immediately plaintiff put on his brakes and brought his car to a stop before reaching said railroad track but within such close proximity that the rear bunk and axle of said log truck struck the front end of plaintiff's automobile. . . . ' "

It is very plain that, in the Oregon case, there was clearly presented a charge of conduct which would naturally deceive and entrap a traveler on the highway.

The hauling of five empty, unlighted, skeleton logging cars behind and in the rear of lights, which signified that they marked the rear end of the train, was, by Judge Belt, characterized as a trap and a snare as follows:

"If the defendant railway company was operating this mixed train—composed in part of five empty logging cars—with red and green lights on the rear end of the passenger coach, but without any lights on the logging cars to indicate the. rear end of the train, it was engaged in a dangerous enterprise. Any person of ordinary prudence who observed the red and green lights on the rear end of the passenger.coach might well conclude that such markers indicated the rear end of the train. Under the circumstances, this feature would tend to divert the attention from any impending danger of colliding with the empty logging cars and would, in fact, constitute a trap and a snare to those who used this highway crossing."

A railroad crossing is always a warning of danger, *Dumbolton v. Oregon-Washington R. & Nav. Co.,* 186 Wash. 433, 58 P. (2d) 806; and a driver who brings his vehicle into contact with a moving train already occupying the crossing must himself be guilty of negligence (if not excused for some special reason), unless the railroad operator has in some way deceived or entrapped him.

There being nothing in the evidence which would warrant the jury in finding that there was anything done or permitted of such a nature, the motion for a directed verdict should have been granted.

Since, as we have found, there was no proof of negligence, we need not proceed further in an attempt to determine whether the respondent husband was deceived by unusual and abnormal atmospheric conditions, for which the appellants could not be held responsible, or was the victim of his own want of due care.

The judgment is reversed, with directions to dismiss the action.

STEINERT, C. J., BEALS, and ROBINSON, JJ., concur.

HOLCOMB, J. (concurring)—The facts in the case at bar, taken as a whole, are much more favorable to respondents as to contributory negligence on their part than those in the *Christensen v. Willamette Valley R. Co.,* 139 Ore. 666, 11 P. (2d) 1060. However, the facts in this case are much less favorable upon the question of contributory negligence of the automobile driver than those in *McFadden v. Northern Pac. R. Co.,* 157 Wash. 437, 289 Pac. 1, where we held that the automobile driver was contributorily negligent as a matter of law. That case is not cited in the prevailing opinion, as it should be, and is controlling.

I therefore concur in the result.