[No. 26931. Department Two. June 6, 1938.]

BORGHILD REINES, *as Administratrix, Appellant,* v. THE CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY *et al., Respondents.*[1]

[1]Reported in 80 P. (2d) 406.

*Scott, Langhorne & McGavick* and *Clarence E. Layton,* for appellant.

*A. N. Whitlock, Thos. H. Maguire, A. J. Laughon,* and *Robt. B. Abel,* for respondents.

ROBINSON, J.—Appellant, as administratrix, brought this action to recover damages for the alleged wrongful death of her husband, John Reines. Deceased was killed when an automobile in which he was riding as a guest ran into the side of a freight train as the train was moving over a highway grade crossing. Appellant joined as defendants the railroad company, its trustees, under Section 77B of the Bankruptcy Act, and the conductor of the train. The trial court sustained a demurrer to the amended complaint on the ground that the complaint did not state a cause of action. Upon plaintiff's election to stand upon her pleadings, the trial court entered a judgment of dismissal.

The material facts set out in the amended complaint are as follows: A track owned and maintained by the railroad company crosses, at grade, the Lincoln highway at a point one-half mile east of Midland, Pierce county. The highway is a paved state highway which bears a considerable amount of traffic.

At about 11:20 p. m., on November 7, 1936, the railroad company was slowly moving a long freight train, in charge of respondent Hendricks as conductor, over this grade crossing. At the same time, deceased was riding on the highway in a Ford car driven by Marvin Olson. Olson drove the car into the side of the moving train, with the result that Mr. Reines, who was Olson's guest, was killed. We quote the pivotal paragraph of the complaint:

"That the collision between the freight cars of said defendants' train and the automobile in which plaintiff's deceased was riding, was due solely to the carelessness and negligence of the defendants in the following particulars, to-wit:

"That said crossing was a dangerous crossing and was known by the defendants to be dangerous by reason of the fact that prior to said collision there had been other such collisions, and said defendants had been urged by representatives of the State Highway Patrol of the state of Washington, to install necessary signal lights and warning devises at said crossing. That at said time and place a dense foggy condition existed in and around the Lincoln highway where the line of defendants' railroad intersects the same, said fog being of sufficient density so as to obscure the vision of the said John Reines and Marvin Olson, the driver and operator of said automobile, to such an extent that as they were proceeding in an easterly direction along and over the said Lincoln highway, they could not and did not obtain a view of the freight cars that were at said time passing along and over the crossing, until they came into collision with the same; that the said John Reines and said Marvin Olson, were not familiar with said crossing and did not know of its existence at said place; that the said defendants carelessly and negligently failed to set a watchman at said crossing so as to warn travelers of the danger that was likely to be encountered when said crossing was blocked by the train óf cars of said defendants; that they were careless and negligent in that they failed to display any signal light, or to maintain an automatic gong

or other devise to warn the said John Reines and said Marvin Olson and others lawfully using said road of the danger; that said Harry Hendricks, conductor in charge of said train, failed and neglected to station any men at said crossing while said train of freight cars was so passing over the intersection; to warn or caution the said John Reines and said Marvin Olson, and others lawfully using said highway, of the fact that a train of freight cars was crossing over the intersection; and also failed and neglected to take any precautions whatsoever to warn the said John Reines and Marvin Olson or others that might be lawfully using the highway of the danger to be encountered, and by reason of the carelessness and negligence of the defendants and each of them in the respects hereinbefore alleged, the said automobile in which plaintiff's decedent was riding came into collision with said freight cars, and said freight cars dragged the said automobile off the highway into the ditch along side of the defendants' right-of-way, where the said automobile burst into flames and burnt, thereby burning the plaintiff's deceased, from which burns the plaintiff's deceased immediately died."

The manner in which Olson was driving is not alleged. This does not render the complaint defective; *Hart v. Clapp,* 185 Wash. 362, 54 P. (2d) 1012; but it leaves without substance the allegation that the crossing was known by the defendants to be a dangerous crossing "by reason of the fact that prior to said collision there had been other such collisions," since, for aught that is alleged, they may have been caused by the fault of the drivers involved.

Nor do we think that the allegation that the defendants knew the crossing was dangerous, because they had been urged by representatives of the state highway patrol to install signal lights and warning devices at the crossing, adds anything to the complaint. It may well be doubted whether the opinion of representatives of the state highway patrol would be re-

ceived in evidence to prove that the crossing was dangerous.

Furthermore, it is not to be supposed that anyone would deny that the crossing was dangerous. The statute law of this state relating to grade crossings has for many years been based upon the theory that all grade crossings are dangerous, and administrative commissions have existed for many years with extensive powers of regulation. As early as 1909 an act was passed providing that all railroads, or extensions thereof thereafter constructed, should cross all existing railroads and highways by passing under or over, unless authorized to do otherwise by consent of the railroad commission. Laws of 1909, chapter 162, p. 618. Subsequent legislation provided that towns and counties or the state highway commissioner might, upon allegations that the public safety required it, petition for the elimination of existing grade crossings and a substitution of under or over crossings, and provided for the machinery for carrying that purpose into effect, including the right of eminent domain. Laws of 1913, chapter 30, p. 74; Laws of 1921, chapter 138, p. 494.

Ever since 1909, the railroad commission, or the successor to its powers and duties, has had the power and duty to require any railroad to install and maintain proper signals, warnings, or other devices to warn and protect the public at any highway crossing. Rem. Rev. Stat., § 10513 [P. C. § 5640]. Additional and later legislation (1931) provides that railroads must install the sawbuck crossing signs, with the lettering "Railroad Crossing," at all grade crossings and "additional safety devices and signs may be installed at any subsequent time when required by the department of public works." Rem. Rev. Stat., § 6308-2 [P. C. § 2691-2], subd. (b).

There is no allegation in the complaint that the statutory railroad crossing signs were not in place, nor that the proper state authorities had ordered the installation or use of additional signals or safety devices. There is, therefore, no question presented as to negligence *per se*.

In *Ullrich v. Columbia & Cowlitz R. Co.*, 189 Wash. 668, 66 P. (2d) 853, it was said:

"When a train actually occupies the crossing, that in itself supersedes all other warnings and gives actual notice by its own presence."

In spite of the fact that this case was decided as late as April 3, 1937, we have, in view of the fact that two cases of this type have been presented for decision during this term of court, made an extended research of the authorities covering cases where the plaintiff has collided with a train occupying a grade crossing. In this research, we believe we have examined all such cases which have been decided by the courts of other states or by the Federal courts during the last nine years, and a few additional cases which, from frequent citation therein, seem to be leading. In seventeen of the seventy-five cases examined, it was held that the questions presented were for the jury. In all the others, it was held that a person so unfortunate as to drive or to be driven into the side of a train standing on or moving over a grade crossing, could not, as a matter of law, recover from the railroad company.

In determining the weight of authority, the seventeen must be reduced to nine, for the following reasons: One of them, *Central of Ga. R. Co. v. Heard*, 36 Ga. App. 332, 136 S. E. 533, rests, at least in part, on the fact that the crossing watchman required by city ordinance was not on duty. Another, *Christensen v. Willamette Valley R. Co.*, 139 Ore. 666, 11 P. (2d) 1060, rests upon the fact that the railroad company

had created a trap by hauling unlighted flat cars behind, and attached to, a lighted passenger train.

We think the very recent case of *Licha v. Northern Pac. R. Co.*, 276 N. W. (Minn.) 813, decided by a divided court on December 24, 1937, is also a case of the "trap" type, and the opinion does not indicate an intention on the part of that court to alter or abandon the general rule, formerly announced and several times applied in that jurisdiction, that a train actually occupying a crossing supersedes all other warnings and gives warning by its presence; for, although a great deal is said in the opinion as to the foggy condition which prevailed, we take it that the actual decision was largely, if not wholly, controlled by another fact which the court stated as follows:

"Just before the street crosses defendant's tracks, there is a slight rise so that defendant's tracks are situated in such a position that the lights of an automobile do not shine on a train if there be one on the crossing."

Later in the opinion, in distinguishing the case from its former decision, the court said:

"In the *Ausen* and similar cases, the train itself was held to be a warning because it could be seen by the driver of the car. But here the case is different."

Five other of the seventeen are cases where the question of signals was not involved, but in each of them the plaintiff was allowed to go to the jury upon showing that the collision occurred at a time when the train had occupied the crossing for a longer period of time than permitted by statute or ordinance and had therefore violated a positive rule of law. This was held to be negligence *per se*, and the minority rule that, in such circumstances, the act of overstaying the statutory period may be regarded as a proximate cause of the collision, was given effect. These five cases are:

*Hofstedt v. So. Pac. Co.,* 1 P. (2d) (Cal. App.) 470; *Dickey v. Atlantic C. L. R. Co.,* 196 N. C. 726, 147 S. E. 15; *Short v. Pennsylvania R. Co.,* 46 Ohio App. 77, 187 N. E. 737; *Mann v. Central of Ga. R. Co.,* 43 Ga. App. 708, 160 S. E. 131; *Galveston H. & S. A. R. Co. v. Marti,* 183 S. W. (Tex. Civ. App.) 846.

The remaining nine cases in which the questions involved were allowed to go to the jury are the following:

*Prescott v. Hines,* 114 S. C. 262, 103 S. E. 543; *Spiers v. Atlantic C. L. R. Co.,* 174 S. C. 508, 178 S. E. 136; *Myers v. Atlantic C. L. R. Co.,* 172 S. C. 236, 173 S. E. 812; *Bober v. Southern R. Co.,* 151 S. C. 459, 149 S. E. 257; *Richard v. Maine Central R. Co.,* 132 Me. 197, 168 Atl. 811; *Elliott v. Missouri Pac. R. Co.,* 227 Mo. App. 225, 52 S. W. (2d) 448; *Rape v. Tennessee A. & G. R. Co.,* 47 Ga. App. 96, 169 S. E. 764; *Orange & N. W. R. Co. v. Harris,* 57 S. W. (2d) (Tex. Civ. App.) 931; *Missouri K. T. R. Co. v. Long,* 293 S. W. (Tex. Civ. App.) 184.

It will be noted that the above nine cases come from five states, South Carolina, Maine, Missouri, Georgia, and Texas. On the other hand, there are twenty-seven jurisdictions which have denied recovery in such cases as a matter of law. Of the fifty-eight cases so deciding, thirty-eight proceed upon the theory that the railroad company was not negligent as a matter of law, and twenty upon the theory that the plaintiff was guilty of contributory negligence as a matter of law.

The state courts holding that no jury question is presented are the following: New Hampshire, North Dakota, Delaware, Alabama, Minnesota, Kansas, Vermont, Massachusetts, New Jersey, Ohio, Wisconsin, North Carolina, Idaho, Mississippi, Louisiana, Pennsylvania, Arkansas, Michigan, Iowa, Missouri, Texas, New York Appeals, Indiana Appeals, Georgia Appeals, Illi-

nois Appeals, and California Appeals. The Federal courts which have so held are the court of appeals for the District of Columbia, the circuit courts of appeals for the third, fifth, and sixth circuits, and the district court for the district of Idaho.

We shall not undertake to cite all these cases, but only those in which the crossing was somewhat or completely obscured by foggy, rainy, or dusty weather, or for some other reason was not out in the open. We make this selection because it is strongly urged in this case that, on account of the fog, the rule laid down in *Ullrich v. Columbia & Cowlitz R. Co., supra,* should not apply. See the following cases: *Missouri K. T. R. Co. v. McLain,* 105 S. W. (2d) (Tex. Com. App.) 206; *Texas & N. O. R. Co. v. Stratton,* 74 S. W (2d) (Tex. Civ. App.) 741; *Sheets v. Baldwin,* 146 Kan. 596, 73 P. (2d) 37; *Dunlap v. Pacific Electric R. Co.,* 12 Cal. App. (2d) 473, 55 P. (2d) 894; *Simpson v. Pere Marquette R. Co.,* 276 Mich. 653, 268 N. W. 769; *Dolan v. Bremner,* 220 Iowa 1143, 263 N. W. 798; *Coleman v. Chicago, B. & Q. R. Co.,* 287 Ill. App. 483, 5 N. E. (2d) 103; *Wink v. Western Md. R. Co.,* 116 Pa. Super. Ct. 374, 176 Atl. 760; *Cleveland, C., C. & St. L. R. Co. v. Gillespie,* 96 Ind. App. 535, 173 N. E. 708; *Pennsylvania R. Co. v. Huss,* 96 Ind. App. 71, 180 N. E. 919; *Gulf, M. & N. R. Co. v. Holifield,* 152 Miss. 674, 120 So. 750; *Scott v. Delaware, L. & W. R. Co.,* 222 App. Div. 409, 226 N. Y. Supp. 287; *Morris v. Atlantic City R. Co.,* 100 N. J. L. 328, 126 Atl. 295; *Gilman v. Central Vt. R. Co.,* 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102; *Trask v. Boston & M. R. R.,* 219 Mass. 410, 106 N. E. 1022; *Jones v. Atchison T. & S. F. R. Co.,* 129 Kan. 314, 282 Pac. 593; *St. Louis S. F. R. Co. v. Guthrie,* 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; *Bowers v. Great Northern R. Co.,* 65 N. D. 384, 259 N. W. 99, 99

A. L. R. 1443; *Gage v. Boston & M. R. R.*, 77 N. H. 289, 90 Atl. 855, L. R. A. 1915A, 363.

The majority of these cases were decided within the last ten years, some of them in 1936 and 1937. We think, therefore, that the rule stated in *Ullrich v. Columbia & Cowlitz R. Co., supra*, is not only supported by the great weight of current authority, but that the great weight of current authority is also to the effect that it is applicable when the crossing is more or less obscured by fog or other weather conditions.

The judgment appealed from is affirmed.

STEINERT, C. J., BEALS, MILLARD, and BLAKE, JJ., concur.

[1]Reported in 80 P. (2d) 409.