[No. 27888. *En Banc.* July 11, 1940.]

Eva SCHOFIELD, as *Administratrix, Appellant,* v. NORTH-
ERN PACIFIC RAILWAY COMPANY *et al.,*
*Respondents.*[1]

[1]Reported in 104 P. (2d) 324.

*George Olson* and *George F. Hannan,* for appellant.

*Robert S. Macfarlane, Dean H. Eastman,* and *Earl F. Requa,* for respondents.

MAIN, J.—This action was brought for the purpose of recovering damages for wrongful death. The defendants Northern Pacific Railway Company and W. C. Armstrong separately demurred to the amended complaint, which will be referred to as the complaint, and both demurrers were sustained. The plaintiff refused to plead further and elected to stand upon her complaint. From the judgment dismissing the action, she appealed.

The accident which resulted in the death of Glenn W. Schofield happened at a railroad crossing a short distance west of the city limits of the city of Renton. The deceased was riding in an automobile truck driven by one D. Dickinson on the highway that extends in a northerly and southerly direction. The railway company owns and maintains a railway track which crosses this highway. The accident happened on the first day of April, 1938, at about one o'clock a. m. At the time, a freight train, going west, was passing over the crossing, and the automobile truck struck one of the freight cars, with the result that the deceased was thrown from the truck and thereafter died.

The complaint is too long to be set out here in full, and we will only epitomize the chief charges of negligence. It is alleged that the track was elevated above the roadway, and, to cross it, it was necessary to drive up an incline, and the headlights of the truck would not show a passing train until the truck was very close to the track; that the railroad track crosses the highway at about one hundred and twenty-five feet north of the intersection of two paved and heavily traveled highways, at which intersection there is an intermit-

tent "blink traffic light," which light and intersection engage the attention of drivers of vehicles coming from the south to the north; that the railway company did not maintain any sign or warning to the south of the track indicating that there was a railroad crossing; that the light at the intersection intermittently diffuses the rays of light along the highway which merge with automobile lights, and this, with the element of the short distance, creates a deceptive situation which makes it difficult to determine whether a train is upon the crossing; that the situation had existed for a great many years and was well known to the railroad company; that, as the train approached the crossing, no bell was rung and no whistle was sounded; that, if the bell had been rung or the whistle sounded, either of them was sufficiently loud to warn the parties in the truck of the presence of the approaching train; and that this failure was one of the proximate causes of the decedent's death.

It is a general rule that, when a railroad train actually occupies a crossing, that in itself supersedes all other warnings and gives notice by its own presence. *Reines v. Chicago, M., St. P. & P. R. Co.,* 195 Wash. 146, 80 P. (2d) 406; *Webb v. Oregon-Washington R. & Nav. Co.,* 195 Wash. 155, 80 P. (2d) 409.

The first of those cases had to do with a situation where the automobile ran into the side of a train when a dense fog was prevailing, and the other happened upon a lighted city street in the city of Spokane. In neither of them was there any unusual or extrahazardous situation presented, and in neither was there anything that could be said to be in the nature of a trap.

There is an exception to the general rule where the situation is unusual or extrahazardous, or constitutes a situation in the nature of a trap. *Licha v. Northern Pac. R. Co.,* 201 Minn. 427, 276 N. W. 813; *Christensen*

*v. Willamette Valley R. Co.,* 139 Ore. 666, 11 P. (2d) 1060. In the first of these cases, an automobile was approaching a railway crossing going downhill, and the situation was such that the lights of the vehicle would not show the track or the train thereon until the automobile was very close thereto, and it was there held that the question was one for the jury. In the second of the two cases, it was held that a railway train, made up in such way as to be misleading, in effect, constituted a trap, and the question presented was not one of law, but one of fact.

In the case of *Ullrich v. Columbia & Cowlitz R. Co.,* 189 Wash. 668, 66 P. (2d) 853, while it was held that there could be no recovery in that case as a matter of law, it was therein recognized that, if a situation was unusual or extrahazardous, or constituted a trap, the question would be one for the jury. In the opinion in that case, there was an extensive quotation from the Oregon case, above cited.

Whether when an automobile runs into the side of a train moving over a crossing or standing thereon presents a question of fact or one of law, depends upon the particular facts of each case. *Trask v. Boston & M. R.,* 219 Mass. 410, 106 N. E. 1022; *Louisville & N. R. Co. v. Mischel's Adm'x,* 272 Ky. 295, 114 S. W. (2d) 115.

Cases such as *Wink v. Western Maryland R. Co.,* 116 Pa. Super. Ct. 374, 176 Atl. 760, and *Chesapeake & O. R. Co. v. Switzer,* 275 Ky. 834, 122 S. W. (2d) 967, from jurisdictions where the rule is that the driver of a motor vehicle must proceed at a speed where he can stop within the range of his headlights, have no application in this state, because the rule here is one of due care. *Eldredge v. Garrison,* 184 Wash. 687, 52 P. (2d) 1240; *Dumbolton v. Oregon-Washington R. & Nav. Co.,* 186 Wash. 433, 58 P. (2d) 806.

In each of the cases of *Cash v. New York Central*

*R. Co.,* 294 Ill. App. 389, 13 N. E. (2d) 1012, and *Bledsoe v. Missouri-Kansas-Texas R. Co.,* 149 Kan. 741, 90 P. (2d) 9, was presented a condition of the highway entirely different from that presented in the case now before us.

Many of the cases which hold that the railroad company was not liable as a matter of law, either because there was no negligence or because the driver of the colliding automobile was guilty of contributory negligence, call attention to the fact that there was nothing in those cases to indicate an unusual or extrahazardous situation, nor anything in the nature of a trap. The cases of *Aaron v. Martin,* 188 La. 371, 177 So. 242; *Reed v. Érie R. Co.,* 134 Ohio St. 31, 15 N. E. (2d) 637; *Sheets v. Baldwin,* 146 Kan. 596, 73 P. (2d) 37, and *Esterline v. Kennicott,* 277 Mich. 130, 268 N. W. 835, are a few of the cases which recognize such a limitation upon the general rule. No case, so far as we are informed, holds that, where an automobile crashes into the side of a railroad train on a crossing, the railway company would not be liable under any and all circumstances.

■■ We now come to the allegation in the complaint with reference to the failure to ring the bell or sound the whistle. Rem. Rev. Stat., § 2528 [P. C. § 9091], provides that every engineer driving a locomotive on any railroad who shall fail to ring the bell or sound the whistle upon the locomotive or cause the same to be rung or sounded at least eighty rods from any place where such railway crosses a traveled road or street on the same level (except in cities), or to continue the ringing of such bell or the sounding of such whistle until the locomotive shall have crossed the road or street, shall be guilty of a misdemeanor. The failure to ring the bell or sound the whistle would be negligence *per se,* and it cannot be held that, as soon as the

locomotive passed over the crossing, the railroad company would be purged of that negligence.

In the case of *Sullivan v. Boone,* 205 Minn. 437, 286 N. W. 350, in which state there is a statute similar to the one just mentioned, it was held, on the particular facts of that case, that, even though the bell was not rung or the whistle sounded, the railroad company was not liable as a matter of law. The court, however, did not hold that the railroad company was not negligent, but only that that negligence was not the proximate cause of the accident.

The case of *Kramers v. Chesapeake & O. R. Co.,* 60 Ohio App. 556, 22 N. E. (2d) 227, is to the same effect, although the statute there was different. There was no requirement in the Ohio statute that the bell should be continuously rung or the whistle sounded until the locomotive reached the crossing.

In this state, usually, the question of proximate cause is for the jury, and it is only when the facts are undisputed and the inferences therefrom are plain and incapable of reasonable doubt or difference of opinion, that it may be a question of law for the court. *Hellan v. Supply Laundry Co.,* 94 Wash. 683, 163 Pac. 9; *Caylor v. B. C. Motor Transportation,* 191 Wash. 365, 71 P. (2d) 162; *Bracy v. Lund,* 197 Wash. 188, 84 P. (2d) 670.

The complaint in this case, as above indicated, contains an allegation to the effect that, if the bell had been rung or the whistle sounded, as required by the statute, either would have been sufficiently loud to have been heard by the two men in the truck and would have served as a warning that the train was approaching the crossing.

The facts as alleged in the complaint, in our opinion, present a question of fact for the jury, and not one of law for the court. The demurrers to the complaint should have been overruled.

The judgment will be reversed, and the cause remanded with direction to the superior court to proceed as herein indicated.

BLAKE, C. J., MILLARD, JEFFERS, and DRIVER, JJ., concur.

SIMPSON, J. (dissenting) — The portion of the amended complaint which charges the respondent with negligence reads:

"That on to-wit: the first day of April, 1938, at about 1:00 o'clock A. M. the said D. Dickinson, while the deceased Glenn W. Schofield was riding with him as a guest and a passenger, was driving his auto truck along a certain highway in King County, Washington, immediately to the West of Renton, Washington, and while so driving he ran into the side of a freight car belonging to and being moved by the defendant Northern Pacific Railway Co. its servants agents; that said freight car was approximately the 18th car in a train of 40 freight cars, each car being about 44 feet long.

"That the negligence of the defendant Northern Pacific Railway Co., its servants and agents, consisted of the following:

"At the said time and place the defendant Northern Pacific Railway Co. maintained a standard gauge single railroad track which intersects the paved highway upon which the said Dickinson, with the deceased as his guest, was driving in a northerly direction intending to come to Seattle. That said track is used very seldom and when a freight train passes over the highway upon which plaintiff was driving the color of the cars and the color of the highway at night so blend that it is very difficult for an automobile driver using ordinary care to tell whether or not there is a train upon said track until an automobilist is very close to the track; that the track is elevated above the roadway and to cross the track it is necessary to drive up an incline, and the headlights on an automobile or truck do not show a passing train until the driver is very close to the track; that the railroad track crosses this highway at a point about 125 feet northerly of the intersection

of two paved heavy travelled roads upon which there is an intermittent blink traffic light, which light and which intersection engages the attention of drivers coming from the south toward the north; that said defendant company maintained no sign or warning to the south of said track indicating that there was a railroad crossing; that there was a railroad crossing sign to the north of said track but when a train is passing over said highway this sign cannot be seen from the south; that the said place is a place which at night when trains are crossing said highway should in the exercise of ordinary care by defendant have a warning sign, an automatic lighting device and an automatic signal bell device to warn motorists that a train is crossing, or else there should be stationed at said point a watchman with a lantern to warn motorists driving upon said highway; that said crossing is at night a very dangerous crossing unless it has said warning sign, lighting and signalling devices or unless a watchman with a lantern is stationed there; that on account of the above situation, the existence of railroad tracks and/or train thereon, cannot in the exercise of ordinary care by an automobile driver be known to the said driver; that the crossing blink light which is overhead intermittently diffuses rays of light along the highway which crosses said railroad track and these rays merge with automobile lights, and this situation coupled with the incline and the lack of any warning or signals, and with the element of the short distance between the highway crossing and the railroad track, creates a deceptive situation and one where it appears that the only danger which an automobile driver has to guard against at the highway intersection, and in this situation it is practically impossible to see a railroad train that is crossing the highway on defendant's tracks until the automobile driver is so close to it that a collision is imminent, and that the said situation in effect creates a trap where, because of the matters above alleged, the automobile driver does not and cannot in the exercise of reasonable care know when the train is crossing this highway in the night time. That this situation had existed for a great many years and the defendant Northern Pacific Railway Co. for many years prior to the happen-

ing of the accident herein alleged knew, or in the exercise of ordinary care should have known, of the dangerous character of this situation. That the defendants Armstrong and Veatti for a long time prior to the happening of the accident herein alleged also knew of the situation alleged in this paragraph; that the said D. Dickson, the driver of the truck in which plaintiff was riding, on account of the matters alleged in this paragraph, and because he was deceived by the situation herein alleged, did not know, and in the exercise of reasonable care on his part could not know of the presence of a train on defendant's track at said time and place."

Cases from other jurisdictions are cited in the majority opinion to sustain its holding. However, the questions presented in the case at bar have been determined by this court in *Ullrich v. Columbia & Cowlitz R. Co.*, 189 Wash. 668, 66 P. (2d) 853; *Reines v. Chicago, M., St. P. & P. R. Co.*, 195 Wash. 146, 80 P. (2d) 406; and *Webb v. Oregon-Washington R. & Nav. Co.*, 195 Wash. 155, 80 P. (2d) 409.

The trial court in the following memorandum decision, made just before signing the order sustaining the demurrer, properly stated the rule which should be applied to this case:

"After a careful examination of the amended complaint herein, I am of the opinion that the same is demurrable under the authority of *Reines v. Chicago, Milwaukee etc. R. R. Co.*, 195 Wash. 146, and *Webb v. Oregon-Washington etc. Co.*, 195 Wash. 155. The supreme court in such cases adopted the rule that a train actually occupying a grade crossing supersedes all other warnings and gives actual notice of its presence irrespective of weather conditions or physical conditions existing thereat. Such rule, in my opinion, prevents the application of the trap case rule upon which the case of *Licha v. Northern Pac. R. R.*, 276 N. W. (Minn.) 813 is based."

I can see no distinction in principle between the case of *Webb v. Oregon-Washington R. & Nav. Co.*,

*supra,* and the case at bar. In the cited case, it was claimed that the railroad approach was on a decline and the light shone in plaintiff's eyes. In the present case, it is pleaded that the highway approached the crossing on an incline, and blinker traffic lights engaged the driver's attention. In each case, the physical conditions present are urged as reason for not seeing the train until it was too late to avoid a collision.

The holdings in these cases present a situation in which a railroad company is negligent when its train is upon an elevated grade crossing, but is not liable when the grade crossing is below the approach level.

The facts pleaded in the present case are not unlike those contained in the *Reines* case, *supra.* Each allege a dangerous crossing known to the railway company; a peculiar physical condition present, a fog in the reported case and an intermittent blinker traffic light in the case at bar; the lack of knowledge on the part of the drivers of the automobiles; the failure to station a watchman at the crossing; and the failure to display an automatic lighting device or maintain an automatic gong or signal bell device.

In the case at bar, the appellant charges that the train whistle was not blown before the train approached the crossing, and alleges the lack of a sign at the side of the road to indicate the presence of a crossing.

"Lights, signs and other warnings are for the purpose of giving notice of or assisting the traveler, about to cross the track, to see an approaching train. When a train actually occupies the crossing, that in itself supersedes all other warnings and gives actual notice by its own presence. *Wink v. Western Maryland R. Co.,* 116 Pa. Super. Ct. 374, 176 Atl. 760; *Ausen v. Minneapolis, St. P. & S. S. M. R. Co.,* 193 Minn. 316, 258 N. W. 511." *Ullrich v. Columbia & Cowlitz R. Co.,* 189 Wash. 668, 66 P. (2d) 853.

It is clearly apparent that, if the traveler could not see the large box cars on the crossing, he could not see a sign at the side of the road.

There was sufficient notice to the travelers in the automobile that the train was present on the crossing. The engine, its tender, and seventeen box cars had passed over the crossing before the automobile reached it. The length of the seventeen box cars, the engine, and tender, would be approximately eight hundred feet. The crossing itself and the presence of the train with its attendant noise was sufficient to warn any driver of danger.

I feel that the respondent was not guilty of negligence when its conduct is measured by the holdings in the cases to which I have just referred.

I therefore dissent.

BEALS, STEINERT, and ROBINSON, JJ., concur with SIMPSON, J.

[1]Reported in 104 P. (2d) 344.