[No. 37379. En Banc. May 20, 1965.]

WALTER V. HEWITT, *Respondent*, v. SPOKANE, PORTLAND & SEATTLE RAILWAY COMPANY, *Appellant*.[*]

*Robert Salvesen*, *Don H. Marmaduke*, and *Cleveland C. Cory*, for appellant.

*Robinson, Landerholm, Memovich & Lansverk*, for respondent.

HALE, J.—The night was black, and a heavy rain fell as Walter V. Hewitt and Jerry Shebley left the tavern in Lyle to drive out of town with Lester Roth in his 1953 GMC pickup truck. They intended to take Hewitt over to Bingen where he could arrange for a ride to work next day, and on the way back were to tip over Jim Pimley's backyard privy as a sort of Halloween prank. They failed in both

[*]Reported in 402 P.2d 334.

missions for on the way out of town on State Primary Highway No. 830 they rammed into a freight train as it coasted quietly through the crossing at the western edge of Lyle.

Hewitt, a guest passenger in the pickup, brings this action against the Spokane, Portland and Seattle Railway Company to recover for serious injuries. From a judgment of $19,240.95 in his favor after trial to the court without a jury, the defendant railroad appeals, assigning error to denial of its motion for a directed verdict and separately to five findings of fact. Our study of the record shows that all assignments combine to raise one decisive question: Was there substantial evidence to support the court's finding that the railroad crossing was extrahazardous or constituted a trap? If not, the cause must be reversed and dismissed; if so, it must be affirmed.

■ When the findings of the trial court are supported by substantial evidence, this court will not disturb them on appeal. *Adler v. University Boat Mart*, 63 Wn.2d 334, 387 P.2d 509. A mere scintilla of evidence will not support the findings (*Charlton v. Baker*, 61 Wn.2d 369, 378 P.2d 432); it requires believable evidence of a kind and quantity that will persuade an unprejudiced thinking mind of the existence of the fact to which the evidence is directed. *Wharton v. Department of Labor & Indus.*, 61 Wn.2d 286, 378 P.2d 290; *Bland v. Mentor*, 63 Wn.2d 150, 385 P.2d 727.

Abundant evidence depicts the crossing and tells us about the accident on this Halloween night of October 31, 1960. Nearly everyone connected with this case knew State Primary Highway No. 830 to be an important highway, running westerly out of Lyle to cross the railroad track at the edge of town and carrying substantial traffic at all hours of the day and night. For a considerable distance east of the crossing, the highway is straight and level, and as one drives west upon it he encounters but two warnings of the crossing: a circular disc sign on the right of the highway about 500 feet east of the crossing and the typical crossarm or crossbuck wooden sign near the track. These two devices have little bearing on the case because the three

occupants of the pickup had lived in the vicinity for years and well knew the crossing. These signs warned of the tracks but not of the presence of a train. Posted speed limit on No. 830 for traffic approaching the crossing from the west was 35 miles per hour.

Lack of illumination creates the main dilemma. A solitary street light 80 feet from the crossing provided the only artificial light at the crossing. Hewitt says that the blackness of the night combined with the reflected light on the raindrops, interacting with the pickup's headlights, obscured rather than illumined the crossing; and that, because of this diffused glow of light, one could not see the crossing until completely beyond the street light. He says that he first saw the freight train after the truck passed through this glow of light by observing the white letters on the boxcars and shouted a warning when they were from 20 to 25 feet of the train.

Consisting of an engine, 15 box and chip cars, a gondola car and a caboose, the train coasted down a slight grade through the crossing, the dark color of the cars blending into the blackness of the night. Only the engine and the caboose, separated by 16 cars over 40 feet each in length, not including the couplings between, carried lights. Heeding the warning from Hewitt and at once seeing the cars, Roth swerved the truck but hit the 9th and 10th cars, each being several hundred feet behind the engine and ahead of the caboose.

As to the infrequency and time intervals that the railroad moved its trains through the crossing, the court found that the crossing was "rarely used except by the Goldendale freight train which made a trip up and back each day except Sunday," and that "The train did not return to Lyle from the north on any set schedule; its return time varied between about 4 PM and 2 AM." On the issue of contributory negligence, the trial court, from substantial evidence, made specific findings pertaining to Roth, the driver, and Hewitt, the passenger. If found that Hewitt, being a guest passenger and under the circumstances having no duty to

maintain a lookout, did, nevertheless, look intently ahead[1] exercising greater care than reasonable prudence required of him, and that Lester Roth, looking attentively ahead, drove the pickup with reasonable care under the conditions then prevailing.[2]

From an abundance of supporting evidence, the trial court found that heavy rain and patches of ground fog seriously restricted visibility; that the light from Roth's pickup and the glow from the lone street light combined and interacted in the rain and darkness to obscure rather than illumine the crossing. It found that the crossing became extrahazardous and a trap to persons traveling on highway No. 830 "especially on dark and rainy nights," and that the railroad knew, or should have known, of this extraordinary danger.[3]

Then, on the question of the railroad's negligence, the trial court found that "The defendant railroad failed to provide adequate warning devices . . . for all types of weather. The defendant railroad failed in its duty to effect the installation of adequate signal lights or devices to convey an alarm or warning . . . when a train was approaching or occupying the crossing," and that this negligence proximately caused the accident.

---

[1]"On the night in question Lester Roth had not driven in such a manner prior to the collision as to put a lookout duty on the plaintiff. However, plaintiff was also looking intently ahead and exercising more than the care required of him under the circumstances. Plaintiff was the first occupant of the pickup truck to see the train, and he immediately shouted the alarm; but it was too late to avoid the collision." Finding of Fact No. 12.

[2]"As the Roth vehicle approached the crossing, Lester Roth was looking attentively ahead. In this respect Lester Roth was acting as a reasonably prudent man in looking attentively ahead as he approached the crossing under the conditions and circumstances then prevailing." Finding of Fact No. 10.

[3]"Defendant railroad knew or should have known prior to October 31, 1960, that the crossing in question was extrahazardous and would constitute a trap to persons rightfully traveling upon Highway 830 under certain conditions, especially on dark and rainy nights." Finding of Fact No. 5.

Appellant relies on *Ullrich v. Columbia & Cowlitz R. Co.,* 189 Wash. 668, 66 P.2d 853, in which we reversed a judgment for the plaintiff where an automobile collided with a logging train passing through a crossing on a rainy night. There, as here, the highway was level for several hundred feet preceding the crossing and "There was nothing whatever to obstruct the driver's view of the crossing except the natural darkness and the rain." But despite other marked similarities in the two situations, we find several equally striking differences.

In *Ullrich,* the plaintiff drove the car; here plaintiff, a guest passenger, had no control whatever over the vehicle. There the court looked to the manner of operating the train in examining the question of negligence; here we are concerned with the manner of maintaining the crossing. We said, in *Ullrich*:

> If negligence is to be found, it must arise out of the operation of a train . ∴ . and it is difficult, indeed, to understand how anyone could reasonably anticipate that harm would come from operating such a train at a modest rate of speed over a *well lighted crossing.* (Italics ours.)

Thus we found that a 300-watt electric floodlight placed at a height of about 20 feet above the northeast corner of the crossing and being a "standard light for the purpose for which it was intended" established as a matter of law that the crossing was well lighted under the circumstances.

■ Involving a well-lighted crossing, *Ullrich* came within the rule that, when a train actually occupies a crossing, it supersedes all other warnings and gives notice by its actual presence. *Reines v. Chicago, Milwaukee, St Paul & Pac. R. Co.,* 195 Wash. 146, 80 P.2d 406; *Webb v. Oregon-Washington R. & Nav. Co.,* 195 Wash. 155, 80 P.2d 409. Each case has distinguishing features. For example, in *Webb,* we found proximate cause wanting when it was shown that the freight cars had been left standing in the crossing longer than the time allowed by city ordinance and also observed

that the "night was dark and very cold, but the air was clear."

But in applying the rule that a train while in the crossing supersedes all other warnings, it being a warning per se as in *Schofield v. Northern Pac. R. Co.*, 4 Wn.2d 512, 104 P.2d 324, we additionally noted a persuasive exception to it. We said, that, where the situation is unusual or extrahazardous, or constitutes a situation in the nature of a trap, the ultimate decision becomes one of fact. *Hendrickson v. Union Pac. R. Co.*, 17 Wn.2d 548, 136 P.2d 438, 161 A.L.R. 96; *Cox v. Polson Logging Co.*, 18 Wn.2d 49, 138 P.2d 169.

All railroad crossings are dangerous—extremely so—but some are far more dangerous than others. Recognition of this truism brought forth the exception that, if unusual or extraordinarily dangerous circumstances prevail, the presence of the train in the crossing is not alone such a warning as to constitute reasonable care and prudence by the railroad under the circumstances. We recognized the exception as equal in status to its parent rule when we said:

> Basically, appellant contends that there is no substantial evidence from which the jury might have concluded that circumstances existed relative to the crossing at the time of the accident which constituted a trap, amounting to an exception to the general rule that the presence of the train was sufficient warning to respondent. If we were members of the jury, we might, by weighing the evidence, reach the conclusion that no trap existed and that respondent was not deceived by the darkness, the black gondola car, the absence of lights or flares, or by the topography of the crossing and the highway approaching it. However, this would be different from saying that there is no substantial evidence in the record from which the jurors could have concluded otherwise. *Wood v. Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 45 Wn.2d 601, 277 P.2d 345.

Again, in *Porter v. Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 41 Wn.2d 836, 252 P.2d 306, we observed that conflicting signals, emanating from a green traffic light at a railroad crossing on Pacific Avenue in Tacoma and the white light given off by the waving lantern of a trainman, created

a question of fact for the jury. The green light told traffic to proceed; the white lantern was intended to convey the message that a train approached. Even though the railroad had provided a flagman, we held it a question of fact for the jury to decide whether the railroad, under the circumstances and conditions then prevailing, exercised reasonable care to warn approaching traffic that its train was about to cross the avenue.

Out of the numerous cases arising from accidents at railroad crossings, two rules emerge: All railroad crossings are dangerous, and all travelers upon the highways must so regard them. A railroad train in the crossing constitutes a warning of its presence, superseding all other warnings, and must be heeded.

■ But where all railroad crossings may be accurately described as dangerous, some are exceptionally so due to unusual circumstances. Each case involving a railroad crossing must, therefore, be considered in light of its own peculiar facts. *Cox v. Polson Logging Co.*, 18 Wn.2d 49, 138 P.2d 169. Where evidence shows the crossing to be exceptionally dangerous, it becomes in law extrahazardous, a term which, through many applications when applied to railroad crossings, has become a term of art, having a special meaning in the law governing railroad crossings.

A crossing is extrahazardous where unusual circumstances or conditions exist which make it so peculiarly dangerous that prudent persons cannot use it with safety unless extraordinary measures are used. *Porter v. Chicago, Milwaukee, St. Paul & Pac. R. Co.*, *supra* [41 Wn. (2d) 836, 252 P. (2d) 306]. *Bradshaw v. Seattle,* 43 Wn.2d 766, 264 P.2d 265, 42 A.L.R. 800.

When we consider all of the unusual circumstances and conditions prevailing at the scene: a heavy rain in the black of night; the coasting, quiet train moving silently through the unillumined crossing of an important highway; the obscuring glow from a street light 80 feet away; and the complete absence of any warning signal such as those ordinarily employed, *i.e.*, fuses, flares, pulsating lights or bells, gates, flagmen—anything to warn a motorist that a train occupied

the crossing—we have evidence from which the trier of facts could find the crossing to be extrahazardous. We see, then, a railroad crossing involving conditions and circumstances reasonably foreseeable by the railroad which had been using the crossing for over 30 years and had observed the changes in weather, seasons and traffic—in short, a crossing so peculiarly dangerous that prudent drivers coming along highway No. 830 on dark, rainy nights could not cross in safety without resorting to extraordinary measures. Whether the railroad exercised ordinary care to guard against the extraordinary danger became a question to be decided by the jury, or, as here, by the court without a jury.

One other point should be briefly mentioned. Respondent moves this court to dismiss this appeal under Rule on Appeal 62, RCW vol. 0, 4 Orland, Wash. Prac. 805, and to allow damages on the ground that the appeal was taken for purposes of delay only. He urges other grounds under Rule on Appeal 43, RCW vol. 0, 4 Orland, Wash. Prac. 718, also, but we need not discuss either the motion or the grounds asserted under each for we are convinced from a study of the entire record that this appeal was made in good faith, diligently prosecuted, and presented substantial issues for review in compliance with each rule.

Judgment affirmed.

ROSELLINI, C. J., FINLEY, HUNTER, and HAMILTON, JJ., concur.

HILL, J. (dissenting)—The majority opinion is so well written that I hesitate to voice a dissent, but the deftly woven phrases do not conceal the plain hard fact that the plaintiff was injured when the car in which he was riding hit the ninth and tenth cars of a 16-car freight train, then crossing the highway.

The train was not running amok; it was traveling on its own tracks, where it indubitably had a right to be. It also had an unequivocal right of way in crossing the highway; RCW 46.60.320; *Morris v. Chicago, Milwaukee St. Paul & Pac. R. Co.*, 1 Wn.2d 587, 595, 97 P.2d 119 (1939); *Haaga v. Saginaw Logging Co.*, 169 Wash. 547, 554, 14 P.2d 55 (1932).

The cited statute says that:

Any person operating a vehicle . . . shall, upon approaching the intersection of any public highway with a railroad or interurban grade crossing, reduce the speed of his vehicle to a rate of speed not to exceed that at which, considering the view along the track in both directions, the vehicle can be brought to a complete stop not less than ten feet from the nearest track in the event of an approaching train. RCW 46.60.320.

The plaintiff was a passenger in the car which hit the freight train, so we are not concerned here with any issue of the contributory negligence of the driver barring recovery by the plaintiff. I merely quote the statute to make it clear that, despite the dark, the wind and the rain, the train was where it had a right to be and where it had the right of way. Mention is made that it was Halloween, but there is no statute nor I.C.C. regulation requiring railroads to keep their trains in on Halloween lest they interfere with the peregrinations of adult pranksters.

There was no negligence in the operation of the train. We have frequently indicated that when a railroad train actually occupies a crossing that, in itself, generally supersedes all other warnings and gives notice by its own presence. *Hendrickson v. Union Pac. R. Co.*, 17 Wn.2d 548, 136 P.2d 438, 161 A.L.R. 96 (1943); *Schofield v. Northern Pac. R. Co.*, 4 Wn.2d 512, 104 P.2d 324 (1940); *Reines v. Chicago, Milwaukee St. Paul & Pac. R. Co.*, 195 Wash. 146, 80 P.2d 406 (1938); *Webb v. Oregon-Washington R. & Nav. Co.*, 195 Wash. 155, 80 P.2d 409 (1938); *Ullrich v. Columbia & Cowlitz R. Co.*, 189 Wash. 668, 66 P.2d 853 (1937).

As the majority points out, there is an exception to this rule where the situation is unusual or extrahazardous or constitutes a situation in the nature of a trap to persons traveling upon the highway. *Hendrickson v. Union Pac. R. Co.*, *supra*, and *Schofield v. Northern Pac. R. Co.*, *supra*.

The judgment against the railroad can be affirmed only on the basis of the court's finding that the railroad was maintaining, under the conditions then existing, a trap.

The only evidence concerning a trap was the testimony that a street light 80 feet from the crossing obscured rather than illuminated it because the reflected light on the raindrops, interacting with the beam from the headlights of the car in which the plaintiff was riding, so diffused the light that one could not see the crossing until beyond the street light. The trial court found that this constituted a trap for persons in the position of the plaintiff.

Assuming this to be a trap for the reason indicated, the railroad did not create it; there was no evidence that it knew that the town of Lyle, through its well intended placing of an overhead light, had created a trap for the unwary on dark and rainy nights. The railroad was there before the overhead street light in question was put in position and maintained by the town of Lyle. If this was a trap on a rainy night, the town and not the railroad was responsible for it.

If we assume that there was a trap at the locus in quo on rainy nights, the situation is so unusual that the railroad must have some notice that it exists before there can be a responsibility on its part to install adequate safeguards to prevent such entrapment. *Hendrickson v. Union Pac. R. Co., supra.* See 84 A.L.R.2d 830-32.

In *Gilman v. Central Vermont R. Co.*, 93 Vt. 340, 348, 107 Atl. 122, 16 A.L.R. 1102 (1919), we have the situation of an automobile hitting a moving train because of a condition in the highway of which the railroad had no notice. In dismissing the action, the court said:

> If the circumstances attending the accident were as plaintiff claimed, it is apparent that the automobile was not stopped before it struck the train because of the greasy condition of the road. But the defendant was not responsible for this condition, and there was no evidence that the trainmen knew or ought to have known of its existence. Thus, an unusual condition, unknown to the defendant's servants, intervened that changed the plaintiff's situation from one of safety to that of danger. There was nothing in the evidence to show that the trainmen did not manage the train with reasonable care and prudence in view of all the circumstances they knew or ought

to have known. The accident happened through no fault of the defendant, and the court should have sustained its motion on the ground that there was no evidence for the jury tending to show actionable negligence.

. For a considerable distance east of the railroad crossing, the highway is straight and level. This is not a trap. We have an overhead light installed and maintained by the town 80 feet east of the crossing. This is not per se a trap. The trap exists only on dark and rainy nights when, as the majority states, Hewitt testified that,

> the blackness of the night combined with the reflected light on the raindrops, interacting with the pickup's headlights, obscured rather than illumined the crossing; and that, because of this diffused glow of light, one could not see the crossing until completely beyond the street light.

We have here a phenomenon, on this dark and rainy Halloween evening, of which the railroad had no notice and which, I submit, was not foreseeable. Judge Murrah puts it much better than I, in his opinion in a very similar case (*Holt v. Thompson*[4], 115 F.2d 1013, 1016 (10th Cir. 1940)). There, the plaintiff was a passenger in a Ford truck which crashed into a train of cars. There was a street light some 12 to 15 feet above the ground about 100 feet from the railroad track. It was the contention of the plaintiff-appellant,

> that the presence of the street light . . . tended to obscure the vision of the driver of an automobile approaching the railroad crossing . . . because the street light decreased the visibility of one approaching it, especially if the objects on the railroad track are dark so as to prevent or decrease reflection. (p. 1014)

Discussing foreseeability, Judge Murrah said:

> Reduced to its last analysis, the question is: should appellee or its employees have foreseen, with the exercise of ordinary and reasonable care, that a street light, the permanent improvement of a municipality, located a distance of 100 feet from a railroad crossing, was so situated

---

[4]Thompson was the trustee in bankruptcy for the Missouri Pacific Railroad Company.

that it cast its rays of light downward and across the highway at this point so that one driving an automobile through the city at a reasonable rate of speed could not see or detect the presence of a railroad train obstructing the highway at this point.

It is unusual that light under these circumstances would be urged as a deceptive agency in the consideration of the question of negligence. Indeed, it is unusual to allege that the presence of street lights at a railroad crossing would constitute a deceptive condition which, considered in the light of the rule of negligence, would cast upon appellee the duty to foresee and anticipate a hazardous condition. We do not say that such a condition could not exist but we do not think that the presence of this street light, at the point described, created such an unusual, peculiar and deceptive condition that it should have been anticipated by reasonable men in the exercise of ordinary care, so as to impose upon them the duty to warn one driving an automobile, at a reasonable rate of speed in compliance with a law of the state of Oklahoma, of the presence of railroad cars across the intersection.

In *Atchison, T. & S. F. Ry. Co. v. Templar*, 204 Okla. 460, 230 P.2d 907 (1951), it was the glare of light from a flood-light and a sign maintained by a filling station some 200 feet from the railroad crossing which constituted the trap. A verdict and judgment for the plaintiff-driver were set aside with directions to render judgment for the defendant. The court said:

If, as contended by plaintiff, the glare of the lights of the filling station rendered a driver temporarily unable to see after he passed the station, we think it was the duty of such driver to proceed with unusual caution until the highway before him was plainly visible, and that the railway company was not required to anticipate that the driver of such vehicle might blindly pursue his way so as to crash into an obstruction which should be visible to one in full possession of his faculties. (p. 463)

The presence of lights maintained by municipalities, service stations, or any third parties which obscure the vision of drivers approaching railroad crossings, rather than being considered as traps by the courts seem to be considered as conditions which require those using the highways to exer-

cise a vigilance proportionate to the danger. *Vassey v. Standard Oil Co. of Kentucky*, 119 F.2d 589 (5th Cir. 1941); *Pollard v. Clifton*, 62 Ga. App. 573, 9 S. E.2d 782 (1940); *Norfolk & Western Ry. Co. v. Barney*, 262 Ky. 228, 90 S. W.2d 14 (1936); *Orange & Northwest R. Co. v. Harris*, 127 Tex. 13, 89 S. W.2d 973 (1936). And this was true even where the railroad's own light was involved, when it had no notice of factors that made an amber light blinding in a fog. *Reid v. Texas & New Orleans R. Co.*, 254 S. W.2d 164 (Tex. Civ. App. 1952).

The *Vassey* case, *supra*, was an action for the wrongful death of a 17-year-old passenger in a truck which had run into the side of a freight train. It was foggy and drizzly, and the testimony was that the occupants of the truck could not see the railroad train because of the floodlights at the Standard Oil Service Station, but that they knew of the existence of the railroad crossing. Both the Standard Oil Company and the receiver for the railroad company were joined as defendants. The district court dismissed, and the circuit court affirmed, holding that neither the Standard Oil Company nor the railroad company was negligent. The court said:

> Although in Georgia the negligence of the driver of an automobile may not be imputed to the guest, it is settled that if the negligence of the driver is the sole proximate cause of the accident the guest may not recover against a third person. Taking as true the facts alleged in the petition it is clear that the driver of the truck was solely at fault. (p. 591)

The respondent here argues that since the trial court found that both the driver and the plaintiff used due care and as no error was assigned to these findings, they must be accepted as verities; and if they exercise due care, the railroad must be negligent. The law recognizes that there is such a thing as an injury for which no one is liable; and, certainly, negligence of the railroad is not established by a trial court's finding that someone else used due care.

There is no showing that the railroad had notice of the phenomenon occurring at this particular railroad crossing

on dark, rainy nights when the glow from a municipal street light and automobile headlights intermingled with raindrops results in a diffusion of light that constitutes a trap to travelers on the highway. I would hold, therefore, that the negligence of the railroad had not been established and dismiss the case.

DONWORTH, WEAVER, and OTT, JJ., concur with HILL, J.