[No. 31261. Department Two. July 19, 1950.]

EUEL J. HARVEY, *Respondent,* v. AUTO INTERURBAN COMPANY *et al., Appellants.*[1]

[1]Reported in 220 P. (2d) 890.

*John D. MacGillivray,* for appellants.

*Wm. Lucht, Jr.,* and *T. G. Patterson,* for respondent.

ROBINSON, J.—This is an action for damages brought by respondent as a result of injuries sustained by him while a passenger in a bus operated by appellant Auto Interurban Company. The bus, containing a seated load of passengers, was en route from Spokane to Cheney when it developed engine trouble. On one occasion, it stalled while climbing a hill; on another, the driver experienced difficulty in starting it after a passenger had been let off. Further on, the motor began to stop again, and the driver pulled the bus off the highway onto a turn-around driveway in front of the George Wright Memorial at Four Lakes. As parked, the bus was approximately six inches off the pavement. Believing that the motor trouble was caused by a weak battery, the driver turned off all of the interior lights, except one in the rear, in order to conserve the battery for the outside marker lights which served as warnings to approaching traffic. He then went to a nearby filling station and telephoned the Spokane office of the bus company, asking, according to his testimony, that another bus be sent out. Instead, the bus company told him that a mechanic would come to repair the bus.

The driver then returned to the bus. It was an evening in early February, and very cold. There was no heat in the bus. It being apparent that the bus would not be repaired for some time, the driver told the passengers that they could leave it to get warm. Most of them did so, either to the service station or to a restaurant also located in the vicinity.

It was about one hour and fifteen minutes after the bus had been stopped that the incident giving rise to this case

occurred. The mechanic had arrived and a new battery had just been placed in the bus, the remaining lights having been, of necessity, extinguished during this operation. The mechanic had gone up to the front of the bus to test the battery, while the driver who had been helping him install it, remained in the rear. At this time, respondent decided to get off the bus to telephone his wife. He arose and walked down the aisle to the door of the bus which opened from rear to front, the door jamb being at the right front corner of the bus. He opened the door and stepped outside. The bus was parked with its right side, on which the door was located, close to a snowbank, so that, in order to walk around to the front of the bus, it was necessary to close the door in order to pass between the bus and the snowbank. Respondent pushed the door partly shut, and since, as he testified, the ground was slick at the point where the passengers had been entering and leaving the bus, steadied himself by placing his hand on the door, intending to walk around the front.

Meanwhile, a fellow passenger, David Williams, who had followed respondent down the aisle, opened the door and stepped out. Respondent's fingers slid into the door jamb. Williams, being unable to see respondent because the door was between them, shut the door, smashing respondent's fingers.

Respondent brought this action against the bus company and its insurer. At the close of his evidence, appellants moved for a nonsuit. The court denied the motion, expressing the view, however, that the question was a close one. After appellants had presented their case, they moved for a directed verdict. This motion was likewise denied. The jury returned a verdict in favor of respondent, who was awarded judgment in the sum of $2,137, together with costs and disbursements. A motion for judgment notwithstanding the verdict was denied, and appellants have taken this appeal. They present one question for decision: Does the record contain evidence of actionable negligence on the part

of appellant bus company, proximately resulting in respondent's injury?

Respondent's original complaint alleged that the bus company was negligent in three particulars, (1) in failing to have its bus in operable condition; (2) in failing to keep lights on so that passengers entering or alighting from the bus could be seen; and (3) in failing to have the door of the bus so controlled that respondent could not be caught in it. At the close of the testimony, the court granted a motion to amend the pleadings to conform to the proof. In accordance with this motion, the word "controlled" in the third allegation was changed to read "controlled and supervised." In this manner, the allegations of negligence were submitted to the jury.

In his brief, respondent has also alleged that appellant's driver was negligent in stopping the bus where he did, particularly in view of the fact that a regular bus stop was located at the service station one hundred fifty feet down the road. But this allegation of negligence was not made in the complaint, nor was it presented to the jury; in any event, it is clear from the driver's testimony that he exercised his best judgment in stopping where he did, and nothing in the evidence, beyond inferences which might possibly be adduced from the testimony, would tend to suggest that he was guilty of any breach of duty towards his passengers in doing so.

█ In *Ullrich v. Columbia & Cowlitz R. Co.*, 189 Wash. 668, 66 P. (2d) 853, we quoted, with approval, the following statements found in 45 C. J. 632, 660, Negligence, §§ 2, 27:

" 'A judicial definition bringing out with admirable conciseness the elements of actionable negligence is as follows: "Negligence is an unintentional breach of a legal duty causing damage reasonably foreseeable without which breach the damage would not have occurred." '

" 'The actual result of an act or omission is not controlling in determining whether or not it was negligent, nor is the duty of the person doing or omitting an act to be estimated by what, after an injury has occurred, then first appears to be a proper precaution, but the question of negligence must

be determined according to what should reasonably have been anticipated, in the exercise of ordinary prudence, as likely to happen.' "

See, also, *Burr v. Clark,* 30 Wn. (2d) 149, 190 P. (2d) 769, in which these principles were restated. That the same considerations apply in determining what constitutes actionable negligence on the part of a common carrier was indicated in *Leach v. School Dist. No. 322,* 197 Wash. 384, 386, 85 P. (2d) 666. There we said:

"It will be admitted that a bus for conveying children to and from school acts as a carrier, and it is incumbent upon the school district to exercise towards its passengers the highest degree of care consistent with the practical operation of the conveyance. *Phillips v. Hardgrove,* 161 Wash. 121, 296 Pac. 559. . . . It is equally well settled that a carrier is not required to take precautionary measures against the occurrence of accidents which it could not reasonably foresee. [Citing cases.]"

With these principles in mind, we turn to the allegations of negligence made in the present case. Considering first the charge that appellant's driver was negligent in failing to keep the interior lights burning, it must be recalled that he was confronted with an emergency situation which required him to turn them off, first, in order to conserve, and later to change, the battery; but, independently of this, it does not appear that the presence or absence of lights in the bus had anything whatever to do with the accident. There was much dispute in the testimony as to how much the moon, which was admittedly shining, illuminated the scene outside; but it is apparent that whether or not it was bright, the reason that respondent failed to see Williams, as he came out of the bus, was not because the lights were off, but simply because the door was between them. Nor could the darkness have deceived respondent into thinking that his hand was elsewhere on the bus than on the opening door. The bus driver's failure to keep the lights on, therefore, even if thought to be a wrongful act, had no connection with respondent's injury, and there was

consequently no issue for the jury to determine upon this allegation of negligence.

■ Respondent further alleges that appellant bus company was negligent in failing to keep its vehicle in operable condition. It might be said in answer to this that the failure of the motor did no more than supply a condition by which the injury was made possible, the actual, proximate cause thereof being the subsequent, independent act of Williams in closing the door on respondent's hand. But even if causation were properly established, and, assuming that the omission of the company in the respect in question amounted to negligence, still, under the rule of the *Ullrich* case, it was not such negligence as would, in this situation, impose liability on the company. For, that the failure of the motor and the consequent halting of the vehicle would result in an accident of the sort that occurred here, could not have been anticipated, and was plainly beyond the scope of foreseeability.

■ This latter consideration must also be held to dispose of respondent's third allegation of negligence, that appellant's driver failed to have the door of the bus so controlled and supervised that respondent could not have caught his hand therein. In this connection, appellants have cited a number of cases holding generally that the driver of a carrier is not required to anticipate an incident of the type here involved. Thus, in *Vogel v. Laiso,* 252 App. Div. 894, 300 N. Y. S. 180, the court reversed a judgment for the plaintiff in the following words:

"Plaintiff was a passenger in the taxicab owned by the defendant. In alighting, she put her hand on the metal upright post between the front and the rear doors. While she was in that position, another passenger, who had alighted before her, slammed the door, injuring plaintiff's fingers that were around the upright post. The law imposed no duty on the driver to anticipate the unusual happening."

In *Intriligator v. Goldberg,* 299 Mass. 333, 12 N. E. (2d) 730, plaintiff was one of several passengers in a taxicab. The cab stopped; one of the passengers alighted; plaintiff reached for a strap, and, finding none, put her hand on the

door jamb; the other passenger closed the door on her fingers. In affirming a judgment for the taxicab company, the court said:

"The plaintiff having been accepted as a passenger, the defendant became bound to exercise in the management of his cab the highest degree of care required by the circumstances to protect her from injury during transportation. *Steverman v. Boston Elevated Railway,* 205 Mass. 508. But he was not bound to anticipate every possible peril which might threaten her. He was not an insurer, nor was he obliged to foresee the impossible or highly improbable. *Isenberg v. New York, New Haven & Hartford Railroad,* 221 Mass. 182. . . . , we do not think his act of closing the door in the circumstances disclosed was a thing which the defendant should have anticipated. The sequence of events as disclosed by the evidence indicates a series of sudden happenings which reduces the incident to a pure accident. The cab stops at Essex Street, the passenger leaves the cab, the plaintiff reaches for a strap, which is not there, in order to raise herself from the seat, she puts her hand on the door jamb, not noticing where she is putting it, and the door is slammed."

See, also, *Tracy v. Boston Elevated R. Co.,* 217 Mass. 569, 105 N. E. 351, where, in a somewhat similar situation, an order directing a verdict for the defendant was sustained.

But respondent alleges that these cases are not applicable and cites in support the language of *Zayer v. Splendido,* 42 N. Y. S. (2d) 85. In that case, a taxicab driver told his passengers to get into the taxi and then left to use the telephone. In his absence, plaintiff proceeded to enter the taxi, and, while he was doing so, another passenger closed the door on his fingers. The court reversed a judgment for the plaintiff, saying:

"The recovery is sought to be sustained upon the theory that defendants failed to furnish proper supervision of the passengers entering the conveyance. The act of the fellow passenger in closing the door, if wrongful, may not under the within circumstances be attributed to defendants. The stipulated facts do not show an overcrowding or other unusual condition of a dangerous character, known to defendants, by virtue of which the defendants were charged by law with the duty of supervision. The defendants could

hardly anticipate that the few passengers would rush into the vehicle in a compact body. Nor was any evidence adduced showing the occurrence of a prior similar occurrence placing on defendants a duty to guard against a recurrence. . . . No actionable negligence is shown on the part of the defendants. The occurrence could not have been reasonably foreseen or guarded against. The issue of negligence is solely one against a third party for whose conduct, on the facts as stipulated, defendants are not responsible."

But the court also said (and this is the language upon which respondent relies):

"All of the authorities cited by plaintiff are clearly distinguishable on the facts. In most, if not all, of the cited cases, the duty of supervision was imposed because of defendants' knowledge of the dangerous condition."

In the present case, respondent contends that a dangerous situation was created by reason of the driver's stopping the bus so close to a snowbank on icy and slippery ground. Having stopped where he did, respondent urges, the driver should have anticipated that some such accident, of the sort which actually occurred, was likely to happen, and should, consequently, have taken extra care in seeing that the passengers were protected.

But did the slickness of the roadway render it any more foreseeable that a passenger might catch his hand in the door? Even if the driver might have anticipated that, in view of the slippery ground, a passenger alighting from the bus might steady himself against its side, reasonable prudence would not suggest that there would be anything particularly dangerous in this. There was no reason to expect that such a passenger might place his hand in the door jamb just as another passenger was emerging from the door, and that the latter might close it on his fingers; or, indeed, that any similar accident might occur. To refer again to the words of the *Ullrich* case, the actual result of an act or omission is not controlling in determining whether or not it is negligent, nor is the duty of the person doing or omitting the act to be estimated by what, after the injury has occurred, then first appears to be a proper precaution. We

cannot base a finding of negligence upon the revelations of hindsight alone.

For the above reasons, we find no actionable negligence in the failure of the bus driver to supervise the door of the bus during the time when the passengers were entering and leaving. Nor can we say that there is any other evidence in this record from which the jury would be entitled to find negligence, on the part of the bus company, or its driver, proximately resulting in the injury to respondent. The incident was, in the language of *Intriligator v. Goldberg, supra,* and similar cases, no more than pure accident.

The judgment is, therefore, reversed and the cause remanded, with instructions to the trial court to sustain the motion for judgment notwithstanding the verdict.

SIMPSON, C. J., MALLERY, HILL, and HAMLEY, JJ., concur.

